## LARAMIE NATIONAL BANK v. STEINHOFF.

INJUNCTION — CONTEMPT FOR VIOLATION OF INJUNCTION — CIVIL AND CRIMINAL CONTEMPTS DISTINGUISHED — REVIEW — APPEAL AND ERROR — JUDGMENT.

1. There is a well-defined distinction between contempts which are purely criminal or punitive, and those which are termed "civil contempts," the latter applying to such as are remedial in character.

2. The two classes of contempts are also distinguished as "direct" and "constructive or consequential."

3. Civil contempts are those quasi contempts which consist in failing to do something which the contemnor is ordered by the court to do for the benefit or advantage of another party to the proceedings, before the court, while criminal contempts are all those acts in disrespect of the court or its process, or which obstruct the administration of justice, or tend to bring the court into disrespect.

4. A class of contempts which are, in a sense, constructive, arise from matters not transpiring in court, but in reference to failures to comply with the orders and decrees issued by the court and to be performed elsewhere. Such refusals and failures are contempts as actual as those committed in open court, and as liable to be punished.

5. In civil contempts the matter should be brought to the attention of the court by affidavit, and the proceedings thereon are, in effect, civil proceedings for the benefit of the adverse party, although denominated a "contempt of court."

6. The statutory provisions (R. S., 1887, Sec. 2929) relating to the punishment, as for a contempt, for the disobedience of an injunction or restraining order, are remedial in character, and the order made in a contempt proceeding, authorized by it, is one which affects a substantial right in a special proceeding, and also is one made upon a summary application, in an action, after judgment, when it is made after, and in aid of, a final judgment or decree. Hence such an order is a final one, and is expressly reviewable by authority of the statute. (R. S., 1887, Sec. 3126.)

7. The primary object of the proceeding authorized by Section 2929, is the enforcement of the injunctional order; thus inuring more particularly to the advantage of the party in whose favor the injunction has been granted. Incidentally, the authority and dignity of the court may be vindicated, but that is not the sole or prevailing purpose of the proceeding.

8. The right to bring the order to this court for review resides in the party aggrieved.

9. The question of the motive or intent with which an injunctional order is disobeyed does not alter or vary the responsibility for the violation. Nor will the advice of counsel avail one charged with contempt for such violation as a defense.

10. The want of intention affects the penalty for the offense against the court only, and possibly, under the statute, the character and amount of security to be required, for future obedience to the court's decree; but if restitution would seem to be demanded, to afford the complaining party the due benefit of the injunction, the absence of wrong design as toward the court could not be considered as at all affecting the right to demand, or the necessity of requiring, such restitution.

11. Where the court has jurisdiction to enter the order which has been disobeyed, it is no defense, in a proceeding for contempt, that the order was erroneous.

30

12. The defendant, by decree in the original action, was enjoined from trespassing upon certain lands, and from disturbing the possession of the plaintiffs or their assigns. He then vacated the premises and remained away seven years. In the original cause his claim was based upon a homestead entry, and his right to the lands thereunder, as against plaintiffs, was determined. Having subsequently made final proof and obtained final certificate under said entry, he again entered upon the premises and remained there against the objection of plaintiff's grantee. Although his subsequent entry upon the lands, was made in claim, of right, under the certificate, issued after the judgment, based upon the entry in controversy in the cause and determined by the judgment, *held*, that he was guilty of contempt in violating the injunctional decree; and he should be required to make immediate restitution to the injured party.

[Decided June 1, 1898. Proceedings in contempt instituted in district court, June 5, 1897.]

ERROR to the District Court for Albany County, HON. CHARLES W. BRAMEL, Judge.

Proceedings in contempt for the violation of an injunction. The case and material facts are stated in the opinion.

*N. E. Corthell*, for plaintiff in error.

Contempt proceedings are the usual and appropriate means of enforcing an injunction, temporary or perpetual. (2 High on Inj., 1449; Rev. Stat., Sec. 2929). The statute is not directory but mandatory. (Suth. on Stat. Const., 461, 462; State v. Mc Clinton (Wash.), 48 Pac. 740.) That class of contempts brought mainly to preserve or protect the rights of litigants, are in the nature of civil executions for the benefit of the injured party. (King v. Barnes (N. Y.), 21 N. E., 182; Snow v. Snow (Utah.), 43 Pac. 620; State v. Willis (Minn.), 63 N. W., 169; State v. District Court (Minn.), 42 id., 598; State v. Nathans (S. C.), 27 S. E., 545; Leopold v. People (Ill.), 30 N. E., 348; Clark v. Burke (Ill.), 45 id., 235; Thompson v. R. R. Co. (N. J.), 21 Atl., 182.) A

judgment in such a proceeding is reviewable on error. (R. S., Sec. 3126; Myers v. State, 46 O. St., 473; cases supra; Blodgett v. State (Neb.), 69 N. W., 751; State v. Stevenson (Ia.), 73 N. W., 360; Hundhausen v. Ins. Co., 5 Heisk., 702; Tyler v. Hammersley, 44 Conn., 393; Baldwin v. Miles, 58 Conn., 496; State v. Horner, 16 Mo., App., 191; Romeyn v. Caplis, 17 Mich., 449; Ry. Co. v. Ramsey, 45 N. Y., 637; Ludlow v. Knox, 4 Abb. App., 326; 7 Abb. Pr., 411; State v. Davis (N. D.), 51 N. W., 942; Wyatt v. Magee, 3 Ala., 94; Newport v. Light Co., 92 Ky., 445; Hessey v. Gund (Wis.), 74 N. W., 342; State v. Hansford (W. Va.), 28 S. E., 791; Dandridge's Case, 2 Va., Cases, 408; 28 S. E., 154; Hamlin v. R. Co. (Mass.), 49 N. E., 922; Gould v. Sessions, 67 F., 163; 14 C. C. A., 366.

In the determination of the question as to whether a contempt has been committed, it does not depend upon the intention of the offending party, but upon the act he has done. (Dodge v. State (Ind.), 39 N. E., 746; People v. Wilson, 64 Ill., 195; Hughes v. People, 5 Colo., 436; Wilcox S. P. Co. v. Schimmel, 59 Mich., 524; People v. Freer, 1 Caines, 485; Thompson v. R. R. Co. (N. J.), 21 Atl., 182; Cartwright's case, 114 Mass., 239; Wartman v. Wartman, Taney 362, 29 F. C., 306; Hawkins v. State (Ind.), 26 N. E., 44.) And even where the party has violated the order under the advice of counsel, that fact is no defense in contempt proceedings. (Lansing v. Easton, 7 Paige, Ch., 367; People v. Rice (N. Y.), 39 N. E., 88; Territory v. Clancy (N. M.), 37 Pac., 1108.) If one has any reason to believe the mandate too broad, he should take steps to have the same modified. In any event, it is his duty to implicitly obey. (People v. District Court, 19 Colo., 343.) In contempt proceedings one who has disobeyed the order is precluded from attacking or questioning its validity or correctness. (State v. Nathans (S. C.), 27 S. E., 52; Leopold v. People (Ill.), 30 N. E., 349; Clark v. Burke (Ill.), 45 N. E., 236; White v. Sup. Court (Cal.), 42 Pac., 482; Ray v. R. R.

Co., 47 N. Y. S., 301; State v. Jamison (Minn.), 72 N. W., 451; State v. Dist. Court (Mont.), 40 Pac., 66; Hawkins v. State, 126 Ind., 294.)

The test of the jurisdiction of the court is whether or not it had power to enter upon the inquiry, not whether its conclusion in the course of it was right or wrong. (Board v. Platt, 79 Fed., 567; Elliott v. Piersoll, 1 Pet., 340.)

*C. E. Carpenter*, for plaintiff in error.

At common law, contempt proceedings can not be passed upon by an appellate court, either by appeal or writ of error. (4 Ency. Pl. and Pr., 809; Ex parte Kearney, 7 Wheat., 38; McMicken v. Parin, 20 How., 133; New Orleans v. Steamship Co., 20 Wall., 387; Hays v. Fischer, 102 U. S., 121; Tyler v. Hamersley, 44 Conn., 392; Easton v. State, 39 Ala., 551; State v. Wood, 42 Am. Dec., 161; State v. Thermond, 37 Tex., 340; Phillips v. Welch, 12 Nev., 158.) The only exception is where the lower court is entirely without jurisdiction. Such rule is in force in Wyoming by the statutory adoption of the common law. (R. S., Sec. 498.) To be guilty of contempt there must be present the criminal elements of willfulness and the specific intent as in all criminal cases. (4 Ency. Pl. and Pr., 766, 767; 20 Wall., 387; Teller v. People, 7 Colo., 451; Wyatt v. People, 28 Pa., 961.)

The contempt alleged in the case at bar is a criminal contempt. (People v. Owens, 28 Pac., 871 (Utah); In re Whitmore, 35 id., 524; Elliott v. Whitmore, 37 id., 461; State v. Leftwitch, 42 N. W., 598; State v. Willis, 63 N. W., 169; Phillips v. Welch, 11 Nev., 187; State v. Davis, 51 N. W., 942.) Therefore the judgment is conclusive. Where a defendant in a contempt proceeding is found not guilty, there is no right of appeal in the complaining party. (Rasch v. Shepard, 63 N. W., 969; Montgomery v. Booming Co., 62 id., 561; Schab v. Coots, 44 Mich., 463; Brown v. Brown, 29 S. W.,

318; Craig v. Mc Callogh, 20 W. Va., 148.) As the alleged contempt is criminal in nature, the code of civil procedure does not apply. (11 Nev., 187; 12 id., 158; Rap. on Contempt, 148 and 141; 98 Am. Dec., 49; 18 Nev., 74; 67 Am. Dec., 376; 26 id., 276; 12 id., 177; and cases cited, supra.)

POTTER, CHIEF JUSTICE.

The plaintiff in error originally brought an action against the defendant in error, claiming in the petition to be in actual possession of a certain tract of land, and that the defendant in error asserted an estate therein, and had trespassed upon the land, and threatened to continue the trespasses, that he was unable to respond in damages, and prayed that the plaintiff might be adjudged the owner in fee simple of the premises free from all claims of an estate or interest therein of the defendant, and that the latter be enjoined from interfering with the possession of plaintiff, or from maintaining or continuing said trespass. The trespass was alleged to consist in going upon a portion of the premises and erecting a dwelling house thereon, and residing therein. A final judgment was rendered in that cause by the district court of Albany County, in favor of plaintiff, by the terms of which it was ordered, among other things, "That said P. A. Steinhoff, and all persons acting in aid of him, be perpetually enjoined and restrained from trespassing upon the said lands, and from interfering with or in any manner disturbing the plaintiffs or their assigns in the full and free enjoyment of said lands and the possession thereof." The record shows that Steinhoff thereupon vacated the premises, and remained away from them for about seven years. His alleged interest in the premises was founded upon a homestead entry under the laws of the United States, it being his claim that they were unappropriated public lands and subject to such an entry. The plaintiff derived its title through an entry of a prior grantor under the desert-land act; and it seems there had been a cancellation or an attempted concellation

thereof after the final proof and issuance of a final certificate. The whole matter was tried in the original action, which resulted in a judgment as aforesaid.

Seven years after the rendition of the judgment, Steinhoff made a final proof upon his homestead entry, showing that his continued residence upon the land had been prevented by the injunction, and a final receipt was issued to him by the proper land officer.

He again went upon the land, being advised and believing, as he testified, that he had a right to do so, and his last mentioned entrance upon the premises was in execution of an intention to live there.

The plaintiff thereupon filed a motion in the said district-court to have the defendant attached for contempt in violating the final judgment of injunction, which motion was supported by the affidavit of one Mads Wolbol, who had become the grantee of the plaintiff, and was in undisturbed possession until the defendant committed the act of disobedience to the injunctional order complained of.

Defendant's answer in the contempt proceedings alleged his ownership of the land under the final receipt above referred to, and that all claims and pretenses of the plaintiff and its grantees had been adjudicated by the land officers of the United States, and the only entry from which plaintiff claimed title had been cancelled and the defendant permitted to enter the lands, and that since his original entry in 1890 he had been entitled to the exclusive possession and title except as against the United States; that the judgment rendered by the court was and is void for the reason that the court had no authority to interfere with the right of the United States to dispose of said lands.

The reply admitted the issuance of the final receipt to defendant, but alleged that it was wholly based upon his entry of 1890 which was set forth in his answer filed during the original pendency of the cause. On the original trial the making of such entry by defendant was conceded.

A hearing was had in the contempt proceedings, at which the above facts were shown; the pleadings and proceedings including the judgment in the cause being produced in evidence. The defendant testified in his own behalf, and introduced his final receipt.

The court thereupon made the following findings:

" 1. The court finds that on the 19th day of May, 1897, the defendant, P. A. Steinhoff, against the will and over the objection of Mads Wolbol, the grantee of the plaintiff, and who was then in possession of the lands described in the final decree of the court in this action, went upon said lands and interrupted and interfered with the use and enjoyment thereof by said Mads Wolbol, and remained thereupon against the objection of said Wolbol."

" 2. That said defendant on the 20th day of April, 1897, having made final proof upon his homestead entry of September 16, 1890, received a final receipt from the receiver of the United States Land Office at Cheyenne, Wyoming, and that he claimed the right to go upon said lands under said final receipt.

" 3. The court, therefore, finds as a matter of law that said defendant did not have such intent in entering upon said lands as would make him guilty of contempt of court." The court thereupon adjudged the defendant not guilty, and ordered him discharged. A motion for new trial was overruled, to which an exception was reserved, and error is prosecuted to this court from the judgment in the said contempt proceedings.

The defendant in error moves that the proceedings in error be dismissed on the ground that the judgment of the district court in a matter of contempt is not reviewable, and although both the motion and the cause upon its merits were, by agreement of counsel, argued and submitted at the same time, the discussion, both on oral argument and in briefs of counsel, was largely confined to the points raised by the motion. On behalf of defendant in error the rule of the common law is relied on which denied the right of appeal in proceedings for contempt of

court. There seems to be a well-defined distinction between contempts which are purely criminal or punitive, and those which are termed civil contempts, the latter applying to such as are remedial in character. This distinction is recognized by many authorities, and we think rests upon sound reasoning. The two classes of contempts are often distinguished as direct and constructive or consequential. In the case of City of Newport v. Newport Light Co., 92 Ky., 445, the court said, ''The power of contempt is exercised for two purposes: first, to vindicate the dignity of the court for disrespect shown to it or its orders; and, second, to compel the performance of some order or decree which the recusant party is able, but which he refuses to perform,'' and the following is quoted in that opinion from Rapalje on Contempts, Sec. 21: ''Civil contempts are those *quasi* contempts which consist in failing to do something which the contemnor is ordered by the court to do for the benefit or advantage of another party to the proceedings before the court, while criminal contempts are all those acts in disrespect of the court or its process, or which obstruct the administration of justice or tend to bring the court into disrespect.'' Again, it is said that ''There are two kinds of contempts recognized by the authorities and by the practice of the courts. Criminal contempts are those committed in the immediate view and presence of the court, such as insulting language, or acts of violence, which interrupt the regular proceedings in courts. This class of contempts may and should be punished summarily, and by order of the presiding judge, or the court, after such hearing at once, as the court may deem just and necessary.'' ''There is another class of contempts which are in a sense constructive, and arise from matters not transpiring in court, but in reference to failures to comply with the orders and decrees issued by the court and to be performed elsewhere. Such refusals or failures are undoubtedly contempts, as actual as those committed in open court, and liable to be punished under the same law. But the process to bring parties into

court, and the time given for a hearing by our rules, are different from a summary process in case of a criminal contempt before the court." (Androscoggin & Kennebec R. R. Co. v. Androscoggin R. R. Co., 49 Me., 392. 1 Bouvier's Law Dictionary (Rawle's Revision), 420.)

The authorities agree that in civil contempts the matter should be brought to the attention of the court by affidavit, which was the practice adopted in the case at bar, and they are in effect civil proceedings for the benefit of the adverse party, although denominated a contempt of court.

Section 2929 of the Revised Statutes found in our code of Civil Procedure, provides as follows: "An injunction or restraining order granted by a judge may be enforced as the act of the court, and disobedience thereof may be punished by the court, or any judge who might have granted it in vacation, as a contempt; an attachment may be issued by the court or judge, upon being satisfied by affidavit of the breach of the injunction or restraining order, against the party guilty of the same; and such party may be required by the court or judge to pay a fine not exceeding two hundred dollars for the use of the county, to make immediate restitution to the party injured, and to give further security to obey the injunction or restraining order, and in default thereof he may be committed to close custody until he complies with such requirement, or is otherwise legally discharged."

A final order which may be reviewed by an appellate court is thus defined by the code: "An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding, or upon a summary application in an action after judgment, is a final order which may be vacated, modified, or reversed, as provided in this chapter." Rev. Stat., Sec. 3126.

So far as the power to punish as a contempt a violation of an order or decree of the court, is concerned, it is said

to be necessarily inherent in the court, as the very existence of the court requires its possession, and without it the court would be impotent, and its orders would cease to be effectual. It is to be observed, however, that our statute goes beyond the mere declaration that a disobedience of an injunctional order may be treated and punished as a contempt, but expressly authorizes in addition to the infliction of a penalty by way of fine an order of restitution to the injured party, and the requiring of further security for obedience to the original decree. An affidavit is required in accordance with the usual practice in civil contempts, indicating a statutory recognition of the right of one benefited by an injunction to ask the assistance of the court in protecting him against its violation.

The statute is clearly remedial in character, and the order made in a contempt proceeding authorized by its provisions is one which affects a substantial right, and is made in a special proceeding and upon a summary application in an action after judgment, when it is made after and in aid of a final judgment or decree. The order is therefore a final one, expressly reviewable by authority of the statute.

Further than this moreover authorities and precedents are abundant sustaining the right of appeal in civil contempts. 4 Ency. Pl. and Pr. 811, 812. In the case of the People v. Diedrich, 141 Ill., 665, the supreme court of Illinois, in the course of the opinion say: '' Prosecutions for contempt are of two kinds. When instituted for the purpose of punishing a person for misconduct in the presence of the court, or with respect to its authority or dignity, it is criminal in its nature. When put on foot for the purpose of affording relief between parties to a cause in chancery it is civil — sometimes called remedial,'' and further, '' It is to all intents and purposes, between the party insisting upon obedience to the injunction and the one charged with its violation. Though sometimes entitled in the name of the people ex rel, etc., it may

properly be in the names of the parties to the original bill. (The People ex rel v. Craft, 7 Paige, 324.) The right to appeal is in either party as in other cases in chancery." And, in that case, a motion to dismiss was overruled. See also Lester v. The People, 150 Ill., 408; Baldwin v. Miles, 58 Conn., 496; The State ex rel v. Horner, Judge, 16 Mo. App., 191, Hundhausen v. U. S. Marine Fire Ins. Co., 5 Heisk, 702; Romeyn v. Caplis, 17 Mich., 449; Newport v. Newport Light Co., 92 Ky., 445; Erie Ry. Co. v. Ramsey, 45 N. Y., 637. In the case last cited it was held that the proceeding was a special one and the order was final, made in a special proceeding affecting a substantial right. In a North Dakota case, State ex rel v. Davis, 2 N. D., 461, an order punishing a person for contempt in disobeying an injunction was held not appealable for the reason that in that State the proceedings could result only in a fine which did not benefit the adversary, but the court recognized the distinction between that case and one where the injured party has a right to institute contempt proceedings for his own advantage; and the same distinction is observed in the Utah cases of In re Whitmore, 35 Pac., 524, and Snow v. Snow, 43 Pac., 620. In the case last above cited the supreme court of Utah held that an appeal lies in contempt proceedings, instituted after judgment, to enforce an order for the payment of alimony and costs for the benefit of the opposite party to a civil proceeding, in such case the contempt proceeding being held to be civil and remedial in its nature. The distinction observed by that court is held to arise upon principle and authority between that class of contempt proceedings wherein it is sought to vindicate the authority and dignity of the court, or those where the contempts consist in the doing of a forbidden act injurious to the opposite party wherein the process is criminal in its nature, and wherein conviction is followed by a penalty of fine or imprisonment, or both, which is merely punitive, and that other class where the proceeding is remedial in its nature and is intended for the

benefit or advantage of the opposite party, to compel the doing or omission to do, an act necessary to the administration of justice in enforcing some private right in a civil proceeding.

Under our statute it seems entirely clear that the primary object to be obtained by the authorized proceeding is the enforcement of the injunctional order, thus inuring more particularly to the advantage of the party in whose favor the injunction has been granted. Incidentally the authority and dignity of the court may be vindicated, but that is not the sole or the prevailing purpose of the proceeding. The maximum amount of fine which may be imposed is limited by statute to two hundred dollars regardless of the importance of the matters involved, or the injurious consequences attending a violation of the decree, which, together with the large authority given the court to compel restitution and prevent further acts of disobedience, renders quite manifest the remedial character of the proceeding. It follows, that the order is subject to review, and that the right to bring the matter to this court resides in the party aggrieved. It would be an absurdity to permit an appeal to the one whose acts are complained of in case of a conviction, and deny it to the party whose rights have been invaded, and for whose advantage the proceedings are authorized, if the judgment is against him. The motion to dismiss must accordingly be denied.

The district court found from the evidence that the defendant against the will, and over the objection of the grantee of plaintiff, went upon the lands and interfered with their use and enjoyment by said grantee, and remained thereon against the latter's objection, and that the defendant claimed the right to enter upon said lands by virtue of his final receipt. The entry upon the lands and interruption of possession of plaintiff or his grantee was what the defendant was forbidden to do by the final judgment in the action. The finding, which accords with the evidence, discloses that the violation was willful. The

court, however, held as matter of law that upon the facts as found, defendant did not have such an intent as to render him guilty of contempt of court. It is evident that the conclusion thus reached by the learned court had reference only to the lack of intention on the part of defendant to offend against the authority and dignity of the court; and did not go to the extent of acquitting defendant of any purpose to do the act which was forbidden by the judgment.

The question of the motive or intent with which an injunctional order is disobeyed does not alter or vary the responsibility for the violation. 2 High on Inj., Sec. 1418. Nor will the advice of counsel avail one charged with contempt for such violation, as a defense. Id., Sec. 1420. The rule in this respect is laid down as follows: "Wherever the party charged has clearly and unequivocally violated a clear and unequivocal mandate of a court of competent jurisdiction, the mere allegation upon his part of bona fide motives and non-intentional contempt will not avail to purge the wrong committed." 4 Ency. Pl. and Pr., 791, and cases cited. Such absence of evil intention, however, may be interposed and considered by way of mitigation of the penalty, which it is held may be on that account reduced to the payment of costs. Id., 792. The want of intention affecting the penalty for the offense against the court only, and under our statute possibly the matter of the character and amount of security required for future obedience to the court's decree, but if restitution would seem to be demanded to afford the complaining party the due benefit of the injunction, we do not understand that the absence of wrong design as toward the court could be considered as at all affecting the right to demand or necessity of requiring such restitution.

It is a universal rule that where the court has jurisdiction to enter the judgment, it is no defense in a proceeding for contempt that it was erroneous. There can be no question but that, in the original cause, the court possessed ample jurisdiction to make the order.

The judgment of the district court discharging the defendant must be reversed.   As the findings are sufficient to show the guilt of defendant, and they are fully supported by the evidence, it is not perceived that a new trial would subserve any useful purpose.   Upon the admissions of the defendant, he was guilty of contempt in the violation of the injunctional decree.   We can not direct the amount of the penalty by way of fine to be inflicted.   It may be that, owing to his innocence of offensive motives, the fine, if any, should be small or merely nominal. Neither are we in a position to determine what further security, if any, should be insisted upon to secure future obedience to the decree.   The judgment will be reversed and the cause remanded with directions to the district court to enter judgment, adjudging the defendant guilty of the contempt, and requiring him to make immediate restitution to the injured party; and that such further orders be made in the premises in respect to penalty and further security as said district court shall deem just and proper within the limitations of and in accordance with the statute.

*Reversed.*

CORN and KNIGHT, JJ., concur.