In the Matter of the Direct Criminal Contempt of Fred Townes.

Fred TOWNES a. k. a. Freddie Steven Townes, Appellant,

v.

STATE of Wyoming, Appellee.

No. 4079.

Supreme Court of Wyoming.

Nov. 14, 1972.

Rehearing Denied Dec. 14, 18, 1972.
See 504 P.2d 46.

Louis A. Mankus, Cheyenne, for appellant.

Clarence A. Brimmer, Atty. Gen., Richard A. Stacy, Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Following a courtroom assault by defendant on his father November 30, 1971 (the judge's version of which is related in the appendix hereto attached), Judge Raper, who had viewed the trouble, directed that defendant be jailed for direct contempt. Six days later after a hearing by that judge, defendant was sentenced to sixty days in the county jail. Defendant has appealed, arguing some ten points, including the court's improper use of both Rule 41(a) and (b), W.R.Cr.P.[1]

The November 30 altercation occurred following a hearing in a divorce matter, plaintiff (Fred Townes' mother) having asked for an order adjudging her former husband in contempt for failure to comply with an order concerning support of the parties' children.

The events succeeding the disturbance are of significance. At the oral instance of the court, personnel from the sheriff's office removed the defendant from the courtroom; and he was held in the county jail. On December 3, 1971, counsel for Townes moved that he "be ordered released from the Laramie Jail where he is being held by the Sheriff of Laramie County, Wyoming, without charge, and he has been so held since Tuesday, 30 November, 1971, and upon information and belief he is being held under the Oral Order of District Judge John F. Raper." The same day the court ordered "the foregoing Motion be and is hereby denied, the matter having been set down for hearing by previous Order of this Court, at 2:00 P.M., December 6, 1971." The order therein referred to, also filed December 3, 1971, entitled "Citation to Show Cause," read:

"WHEREAS, on November 30, 1971, at a regular session of the above-entitled Court and in the immediate view and presence of the presiding judge thereof, Freddie Steven Townes, did act in a disorderly, contemptuous and insolent manner and did impair the respect due the Court's autority [sic];

"IT IS HEREBY ORDERED, that Freddie Steven Townes appear before this Court at Cheyenne, Wyoming on December 6, 1971, at 2:00 o'clock P.M., then and there to show cause why he should not be adjudged guilty of, and punished for contempt in the presence of the Court."

On December 6, the court made a statement at the commencement of the proceeding and at the conclusion of the hearing sentenced the defendant to the county jail for sixty days. On December 10, the court entered a "Judgment and Sentence" (see appendix).

The "Judgment and Sentence" was in effect the only attempted compliance with

---

1. These provisions are basically identical to Rule 42, Fed.R.Cr.P.

Rule 41(a) as to a certificate, which rule provides:

"A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts, shall be signed by the judge and entered of record."

At the hearing on December 6, after the judge had made a narrative statement of the happenings, the defense counsel asked for a continuation for the reason that he had had no time to interview witnesses and had talked to the defendant for only a short time. The court denied the motion for continuance, saying, "Well there is no trial as such in this type of a contempt proceeding where the Court was present and observed all that took place," indicating that it would, however, hear anything that counsel had in mitigation.

█ A court's power to punish for contempt is a necessary and integral part of the independence of the judiciary. Nevertheless, where there has been a criminal contempt and the trial court makes a summary disposition under (a) of Rule 41 it "must be meticulously careful to observe * * * [procedural] safeguards," Yates v. United States, 9 Cir., 227 F.2d 848, 850; Widger v. United States, 5 Cir., 244 F.2d 103, 107; and if there is a *serious* question concerning defendant's mental responsibility, a hearing must be held under (b), Panico v. United States, 375 U.S. 29, 30, 84 S.Ct. 19, 11 L.Ed.2d 1; Rollerson v. United States, 119 U.S.App.D.C. 400, 343 F.2d 269, 276; 3 Wright, Federal Practice and Procedure: Criminal § 707, p. 167 (1969).

The State argues that in holding the December 6 hearing the judge was doing something for the benefit of the defendant, which he was not required to do by the law; that the hearing was for the purpose of allowing defendant to show any circumstances in mitigation which might lead to a less severe penalty than that which would otherwise be imposed; and that it is impossible to see how defendant can fault the court for attempting to be overly fair with him in granting him a hearing to which he was not entitled.

█ We find such argument unconvincing. Even were we to concur in the propriety of a hearing to determine the severity of punishment, under the circumstances here present the lack of recitation of facts required by Rule 41(a) prior to the hearing would prejudice the defendant in that he could not properly marshal facts to be presented in mitigation.[2] This is not to say that there was need for any immediate filing of a certificate. As said in Hallinan v. United States, 9 Cir., 182 F.2d 880, 887:

"* * * the word 'summarily' does not require hasty determination and * * * the night hours spent by the judge in preparing his summation for his contempt order, delivered on the following morning, are not an improper incident to summary action."

Furthermore, while to this court the temper displayed by the eighteen-year-old defendant toward his father was not such that would have caused serious question as to his sanity, the trial court apparently had doubts in that regard, contacted a psychiatrist, and solicited his opinion; and the hearing held was in the nature of a trial —not in mitigation. These factors together with the ten-day delay in filing even a semblance of a certificate constitutes such a departure from the proceedings authorized under Rule 41(a) that the cause must be reversed and remanded for proceedings under (b) of Rule 41.

Reversed and remanded with instructions.

2. In the "Citation to Show Cause" the court spoke of defendant's insolent manner. This apparently caused counsel to now argue that the contempt citation was not only for the assault but for defendant's behavior when leaving the courtroom. The State takes the position that the narrative makes it clear that the contemptuous conduct consisted of the assault and battery only. Of course, had there been a proper certificate filed, rather than the citation, problems of this nature would not have arisen.

## APPENDIX

In The District Court for the First Judicial
District Laramie County, State
of Wyoming

Betty Lou Townes,
          Plaintiff,
    vs.                          Docket
                                 No. 62–462
William B. Townes,
          Defendant.

In the Matter of the
Direct Criminal Contempt     Dec. 10, 1971
of Fred Townes.

## JUDGMENT AND SENTENCE

On the 6th day of December, 1971, there came on regularly to be heard the above matter of the direct criminal contempt of Fred Townes.

IT IS HEREBY CERTIFIED that the attached transcript of the Court's narrative of events occurring on the 30th day of November, 1971, is factually true and correct in every respect.

IT IS FURTHER CERTIFIED that the photographs attached hereto with their captions in truth and fact correctly depict, illustrate and describe the physical arrangement of the court-room, hall, chambers entry-way and parties described by the Court in the transcript; that also attached is a certified copy of the report of mental examination of Fred Townes by Dr. Donald Herrold, M.D.

THE COURT FINDS and declares that the testimony of Fred Townes and his mother, Betty Lou Townes at the hearing on the 6th day of December, 1971, is either a wilful fabrication for the purpose of discrediting the Court or a gross failure of recollection and inaccuracy and that the testimony of David Smith is grossly inaccurate for the most part, not a correct statement of facts or relates to some later occurrence in the court-room after Fred Townes was forcibly removed; that Betty Lou Townes was not in the court-room struck by William Townes prior to Fred Townes jumping upon and beating his father and was not the provocation therefor.

THE COURT FURTHER FINDS Fred Townes guilty of a direct criminal contempt in the presence of the Court on the 30th day of November, 1971, and being fully informed, it is

ORDERED and ADJUDGED that FRED TOWNES be and is hereby sentenced and committed to the Laramie County Jail, Cheyenne, Wyoming for a period of sixty (60) days but that he be credited thereon with time spent in jail from the 30th day of November to the date of this Judgment and Sentence.

Dated this 10th day of December, 1971.

(s) JOHN F. RAPER
                    Judge

In the District Court for the First Judicial
District, Laramie County, State
of Wyoming

BETTY LOU TOWNES,
          Plaintiff,
    vs.                          Docket No.
                                 62–462
WILLIAM B. TOWNES,
          Defendant.

Before: The Honorable JOHN F. RAPER, Presiding Judge.

---

Appearances:

Mr. John F. Lynch, Kline, Tilker & Lynch, Attorneys at Law, American Natl. Bank Bldg., Cheyenne, Wyo.

Attorney for William B. Townes.

Mr. Louis Mankus, Attorney at Law, Bell Bldg., Cheyenne, Wyoming.

Attorney for Freddie Townes (Defendant in Contempt Proceedings).

---

BE IT REMEMBERED that on this 6th day of December, 1971, at Courtroom B, City and County Bldg., Cheyenne, Laramie County, Wyoming, before the Honorable John F. Raper, Presiding Judge, the matter of Contempt Proceedings against Freddie Townes came on for hearing, where-

upon the following proceedings were had, to-wit:

THE COURT: This is a proceeding in contempt and filed in the case of Betty Lou Townes vs. William B. Townes in Docket Number 62–462, and it is here only because that is the case in which the occasion arose.

Will you step forward, Mr. Townes?

MR. MANKUS: Your Honor, I wonder if I might make a motion?

THE COURT: Not at this time. You can make your motion when I am through.

MR. MANKUS: Thank you, your Honor.

THE COURT: Stand over in front of the table and you with him, Mr. Mankus. You are Fred Townes, are you?

THE DEFENDANT: Yes, sir.

THE COURT: And you are present in court with your attorney, Mr. Mankus?

THE DEFENDANT: Yes, sir.

THE COURT: Now you have been cited before the Court, Mr. Townes, for a direct criminal contempt committed in the presence of this court on last Tuesday, November the 30th, 1971 shortly around or before 5:00 p. m., and I will relate to you what the Court considers to be your contempt.

I was the presiding judge in a proceeding that involved a dispute between your father and your mother, Betty Lou Townes, over some allegedly unpaid child support. After the evidence was closed and the statements of counsel had been concluded, I proceeded to announce the Court's decision and while this was being done apparently something that I said displeased you considerably. And so you stomped out of this courtroom and you slammed the courtroom door, obviously all in anger and in a very disrespectful fashion. As a matter of fact, that door practically shook on its hinges.

When I finished my decision the court was recessed and I departed by the east door of this Courtroom B, and it is on the west end of the Third Floor of the courthouse. This is the courtroom in which these proceedings took place. I am holding these proceedings here today so that everyone present is going to know exactly what the picture was at that time.

As I went out of the courtroom out of the—it would be the east door of Courtroom B, you were standing down by the doors of Courtroom A which is the next courtroom just east of here and about 15 or 20 feet from this door and I observed you there. And as soon as I had departed the courtroom you headed toward this courtroom and you were in a tremendous hurry, you were moving quickly and you practically broke into a run to get back into this courtroom.

Now the door to my chambers is directly across from the west door of this courtroom and that door is the one that is used for ingress and egress to and from the courtroom by the litigants and attorneys and the public. And as I passed through the small hall from the outside door to the inside door of my chambers, I turned to see what you were going to do because I was suspicious of what you might do because of your conduct in the courtroom. And so I turned and I can see directly into this courtroom from that small hallway. I can see the end of this table which is on the north side of this courtroom. Your father was occupying the chair which I can describe for the record as being the north chair on the west side of counsel table and it's the table that is closest to the door. Having just gone out, everyone in the courtroom was still standing and your father was standing there with his back toward the courtroom door. Now I witnessed all of this that I am telling you about myself. So it was conduct that took place in my presence. So I could and I did see you jump on your father's back and start beating him with your fists and in literally a crazy sort of violence, and from where I was standing I also noticed that you picked up the courtroom chair—a courtroom chair—and that chair is still in the courtroom at the end of the table that I have described—and you brought it down on top of him, and apparently it glanced

off of him, went across the room and the leg was broken. And if you care to look at the broken leg it is there. The one leg was splintered and the caster on it was bent and it had to be repaired.

Now when you jumped on him you did so without any warning whatsoever, and this Court would describe that as being a cowardly act on your part to say the very least.

Now Lamont Miller, the Reporter for this Court, came into the hall, and I had by that time moved into the hall and could see what was going on in here so I requested him to run downstairs and notify whoever was in the Sheriff's office to get up here and bring this tumult that was taking place in this courtroom to an end. And the Sheriff and his deputies came immediately. And there were a total of four of them finally in the courtroom. And I should note that this courtroom is at the west end of the hall and the steps go directly from that end of the hall down to the Sheriff's office so there is only a short flight of stairs there. Now I observed personally the tremendous effort and the struggle that was required in order to bring you under control and to hand cuff you and literally drag you out of this courtroom and downstairs and into the county jail. Now the reason for you having to be dragged down there was because you were thrashing around and resisting and fighting every inch of the way. Now the Court is informed that again in the Sheriff's office when the hand cuffs were removed you broke away and once more had to be subdued.

Now I observed your father in the hall. He was leaning up against the stair rail and was in a state of collapse from this completely unwarranted attack upon him. And I also personally observed some contusions about his head. The Court has since been informed that he has suffered a hairline fracture of the jaw and was unable to work last week and in all likelihood will be unable to work this week.

Now I looked around this courtroom after this struggle that took place in here. The tables and the chairs were in a terrible state of disarray. The one chair was damaged, splintered and the caster bent; and the corner of the pillar right behind you there and directly in front of me is chipped from this table on the north side of the courtroom having been jammed into it. Now most of this struggle took place right over here on the north side of the courtroom.

Now I want you and if there are any news representatives present, I want them likewise to understand that at no time during this attack that you made on your father and while the Sheriff and his deputies were bringing you into submission did I enter this courtroom. This has been inaccurately reported in the news media. The attorneys from what the Court could observe and I was right at the door here, were doing their best to do what they could but it was just an impossible situation.

Now if the men of the Sheriff's office had not been so quickly available then it might have been necessary for court personnel to become involved because you were completely wild and out of control. And I did not assist in hauling you off to the Sheriff's jail either. But I did direct as you were being taken from the courtroom that you be held in jail for contempt in the presence of the Court. Now I doubt very much whether you heard that, but that was the time when I did direct your being jailed.

Now because of your conduct being like that of some sort of person obsessed, and you acted so much like a person with a deranged mind, and because of the testimony of your mother during the hearing that during the past summer you had shown some indication of mental disturbance, I got in touch with the County Attorney and requested that proceedings for mental examination be initiated. Now the report of the court appointed psychiatrist shows that you are accountable for your actions. So the Court is at liberty now to proceed

against you for this criminal contempt which I have just described.

Now some time has been spent here outlining to you the circumstances of your offense and every word of it is being taken down. It is going to be transcribed and it is going to be made a part of the Order that the Court is going to make in this case. And I certify in your presence as I would certify in the order that I saw and that I heard the conduct constituting this contempt and that it was committed in the actual presence of the Court.

I should explain to you the nature of proceedings for direct criminal contempt. You were forthwith jailed because such a contempt in the presence of the Court may be dealt with summarily by a court. A contempt of court is a situation—in the situation that we have here it is not a matter between your mother and your father as litigants who were appearing in the case that the Court was hearing. But it is an offense against the State of Wyoming and it is not an offense against the presiding judge; and when I say the presiding judge, I mean me. It is not a—it is not a contempt against a judge personally. This is a matter between the State of Wyoming and you.

These contempts are punishable because of the necessity of maintaining dignity and respect towards courts and their decisions. The proceeding is to punish a public wrong done by misbehavior and disrespect toward the judicial system itself.

Litigants are entitled to come before courts with a freedom from threat and personal harm when they do come into the courtroom here. Now these can't very well be called the "halls of justice" if persons having every right in the world to be here and use these facilities and while actually engaged in court business must do so with a fear that they are in danger of being physically beaten by the dissatisfaction of some person who is interested in the outcome of the case before the court.

This is neither the time nor the place for anyone to spit out his venom and seek some sort of a physical vengeance against someone who supposedly has done you some harm.

The administration of justice includes more than those moments when the judge is in the courtroom and actually presiding. It is completely contrary to any concept of law and order that there be any disruption of the peace and the dignity of the State of Wyoming in this courthouse either immediately before, during or after a trial, hearing or a proceeding such as was taking place here last week.

Now, Mr. Townes, with this explanation is there any reason why the Court should not fix a definite punishment for a direct criminal contempt of court committed in its presence?