Patricia Ann **ANDERSON**, Appellant (Defendant),

v.

James Scoon **ANDERSON**, Appellee (Plaintiff).

No. 83–25.

Supreme Court of Wyoming.

Aug. 9, 1983.

Murlie C. Hanson, Cheyenne, for appellant.

E. James Burke and Thomas E. Campbell of Hanes, Gage & Burke, P.C., Cheyenne, for appellee.

Before RAPER,* THOMAS, ROSE and BROWN, JJ., and GUTHRIE, J. Retired.

ROSE, Justice.

This appeal concerns the power of the trial court to hold a party in a divorce action in contempt for selling property which was awarded to the opposing party, but which actually was owned by the parties' minor son.

In July, 1982, appellee James Anderson filed a complaint, seeking a divorce from appellant Patricia Anderson. Within a week, the appellant filed her answer and counterclaim. Both parties listed two cows and a calf as marital property. However, these animals were not assets of the marriage, as the cows had been purchased for the couple's minor son several years earlier by Mrs. Anderson and her mother.

Mrs. Anderson initiated arrangements to sell the animals in August of 1982. Before the sale was consummated, the parties' divorce action came before the court, and on November 16, 1982, a judgment and decree was filed which awarded the two cows and the calf to Mr. Anderson as his sole and separate property. The animals were sold the following day. Subsequently, Mrs. Anderson filed a petition to modify the divorce decree to reflect the fact that the animals had been erroneously listed by the parties as marital assets. Mr. Anderson responded by filing a motion for an order to show cause why the appellant should not be held in contempt for selling the cows and calf.

* Retired June 13, 1983, but continued to participate in the decision of the court in this case pursuant to order of the court entered June 13, 1983.

At the hearing on the petition for modification and the order to show cause, the court concluded that neither party had owned the two cows and the calf and that the animals should be struck from the divorce decree. In addition, the court found that Mrs. Anderson should be held in contempt for selling the animals and that she could purge herself of the contempt by paying to Mr. Anderson the value of the cows in the sum of $1,570. The court further directed Mrs. Anderson to pay appellee $230 for attorney's fees.

The question presented for review is whether, under the facts of this case, the trial judge acted properly in requiring that appellant purge herself of contempt of court by paying to Mr. Anderson the price that the cows brought on sale plus attorney's fees.

We will reverse.

### LAW OF CONTEMPT

In *Horn v. District Court, Ninth Judicial District,* Wyo., 647 P.2d 1368 (1982), this court reviewed the law of contempt. There we said that contempts of court are usually classified as either civil or criminal in nature, depending upon the purpose of the contempt order.

" * * * [A] civil contempt is generally intended to compel a party to comply with a lawful court order, while a criminal contempt is punitive in character and is enforced so that the authority of the law and the court will be vindicated. *Tucker v. State,* 35 Wyo. 430, 251 P. 460 (1926); *Laramie National Bank v. Steinhoff,* 7 Wyo. 464, 53 P. 299 (1898). Another way of distinguishing between the two is to say that the primary purpose of criminal contempt is to punish, while the primary purpose of civil contempt is to coerce. *City of Wilmington v. General Teamsters Local Union 326,* Del.Supr., 321 A.2d 123 (1974)." 647 P.2d at 1373.

[1] Thus, whether a contempt is civil or criminal depends upon what the court is seeking to accomplish by imposing the particular penalty. *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). If the penalty is intended to operate in a prospective manner so as to bring about compliance with an order of the court, then it relates to civil contempt. If, however, the penalty is unconditional and imposed to vindicate a prior transgression against the court, then criminal contempt is involved. *Shillitani v. United States,* supra.

▮▮ Civil and criminal contempts of court may also be classified as either direct or constructive, depending upon where they are committed. Direct contempts are those that occur in the presence of the court, while constructive contempts occur outside of the observation of the judge. *Horn v. District Court, Ninth Judicial District,* supra; *Application of Stone,* 77 Wyo. 1, 305 P.2d 777, cert. denied 77 S.Ct. 593 (1957); *Ex Parte Hennies,* 33 Ala.App. 377, 34 So.2d 22, 25 (1948). It is the duty of the appellate court to determine the nature of a contempt based on the manner in which it occurred and the reasons why a particular penalty was imposed. *Horn v. District Court, Ninth Judicial District,* supra.

### NATURE OF CONTEMPT IN THIS CASE

The transcript of the contempt hearing, which reflects the questioning of Mrs. Anderson by the court, is instructive on the court's purpose in imposing the contempt order:

"Q. [By the court] Well, ma'am, did you testify at that [divorce] trial?

"A. [By Mrs. Anderson] Yes.

"Q. Were you sworn to tell the truth, the whole truth, and all the truth?

"A. Yes.

"Q. Why didn't you tell the Court who the cows and calf belonged to?

"A. I don't know. I think when I put down marital property, that was—I saw it on Jim's paper. I put it on my paper, and we should not have done that because they were always Bryan's.

"Q. I understand that, but why didn't you tell the Court that?

"A. I don't know.

"Q. You heard the judgment of the court, didn't you?

"A. (No audible response.)

"Q. The Court divided the property and gave its judgment?

"A. Yes.

"Q. You heard that the two cows and calf were to go to the plaintiff, didn't you?

"A. Yes.

"Q. Why didn't you say anything then?

"A. Well, I didn't know that we could say anything then.

"Q. You had a lawyer that you could ask, didn't you?

"A. Yes.

"Q. Why didn't you say afterward then? Why didn't you tell your lawyer afterward—

"A. I did.

"Q. —so the change could be made in the Decree or at least proposed?

"A. I did tell the attorney later."

At the close of the hearing, the court announced its decision by stating:

"Now, I think Mrs. Anderson knew what she was doing when she sold the cattle. I think she was being petulant, and she knew she shouldn't have done that. *She's had a duty to say something to the Court.* She knew that the property didn't belong to either of them. It belonged to her son, and the Court took all that into effect when it made its decision. So the Court will then, now being advised that neither party had the two cows and a calf, will sign an Order striking the two cows and calf from the Court's Decree. *The Court finds that Mrs. Anderson is in contempt of this Court by her actions, and she has played fast and loose with the Court. She should not be allowed to do that,* and the Court is going to allow her to purge herself of that contempt by following the Decree from here on, and also by returning or paying back to Mr. Anderson the value of the two cows and calf." (Emphasis added.)

■ From the foregoing portion of the record, it appears that the trial court, in holding appellant in contempt, was acting to punish her for withholding from the court the correct information concerning the cows until after she had sold them. The trial judge characterized such conduct as "play[ing] fast and loose with the Court," and it must be assumed that he imposed a penalty as a means of vindicating the dignity and power of the court. *Horn v. District Court, Ninth Judicial District,* supra; *Townes v. State,* Wyo., 502 P.2d 991, reh. denied 504 P.2d 46 (1972). We conclude that, in acting to penalize Mrs. Anderson for her conduct, the court held her in criminal rather than civil contempt.

Neither the fact that the contempt proceedings were initiated by a private party rather than by the court nor the fact that the penalty for the contempt was made payable to the private party alters the conclusion that the contempt was criminal in nature. Such factors, while relevant, are not conclusive in determining the category of the contempt in question. *Nye v. United States,* 313 U.S. 33, 42, 61 S.Ct. 810, 812–13, 85 L.Ed. 1172 (1941).

There is another reason why this case can be said to involve criminal rather than civil contempt. As discussed above, the purpose of civil contempt is to compel a party to obey a lawful order of the court. However, in this case the trial judge struck the portion of the divorce decree which set over the cows to appellee. Once that was done, there was no outstanding lawful order with which Mrs. Anderson could be compelled to comply. Thus, we must assume that the sole function of the fine was to punish appellant for her conduct which the judge deemed to be disrespectful of the court.

■ A criminal contempt may be further characterized as either direct or constructive. *Horn v. District Court, Ninth Judicial District,* supra; *Application of Stone,* supra. In some situations it may be difficult to say with certainty which classification is appropriate. *Ex Parte Hennies,* supra. In the present case, a portion of appellant's contemptuous conduct is clearly direct. She represented to the court in the divorce proceeding that property belonging to her mi-

nor son was marital property. Although the judge did not become aware of the misrepresentation until several months later, at which time he imposed a penalty, the misrepresentation occurred in his presence, during the divorce trial.

The second portion of appellant's contemptuous behavior, the sale of the cows, may be characterized as constructive contempt, since it occurred outside of the judge's presence. The court was first made aware of the sale by appellant's petition to modify the decree. Thus, we conclude that appellant's conduct is properly identified as criminal contempt which is partly direct and partly constructive.

## THE PENALTY

While it is true that a court possesses inherent power to punish for contempt and that such power is "a necessary and integral part of the independence of the judiciary," *Townes v. State,* supra, 502 P.2d at 993, the penalty imposed must be a lawful one. As noted above, the trial judge provided in his order that appellant could purge herself of contempt by paying to Mr. Anderson $1,570, the price that the cows brought on sale, plus attorney's fees. By ordering appellant to pay what amounted to a fine to the opposing party in the underlying divorce action, the judge exceeded the scope of his inherent power. As we said in *Horn v. District Court, Ninth Judicial District,* supra, once a contempt has been identified as criminal in nature, the proper aggrieved party is the State and not a private litigant. Since criminal contempt is imposed to vindicate the integrity of the courts and to preserve public confidence in the judicial system, the public, rather than an individual suitor, is the beneficiary of any fine imposed. *Horn v. District Court, Ninth Judicial District,* supra, and cited cases.

" * * * [T]he court has no power to impose a fine the purpose of which is to punish but which in fact inures to the benefit of a private litigant." *Horn v. District Court, Ninth Judicial District,* 647 P.2d at 1378.

We are especially reluctant to approve a benefit to a private litigant who himself was guilty of misrepresenting to the court the extent of the marital property.

We reverse the court's order which requires appellant to purge herself of contempt of court by paying to appellee the value of the two cows and the calf in the sum of $1,570 plus $230 for attorney's fees.

THOMAS, Justice, specially concurring.

I am in complete agreement with the result reached in this case by the majority opinion. In light of the dissenting opinion I felt compelled to articulate my position with respect to this rather unusual situation.

Initially I must protest the suggestion of the dissenting justice that the trial court did nothing more than adjust the decree distributing property between the parties. The trial court did not purport to do that in its remarks at the close of the hearing when it announced its decision, even though it certainly had the power at that time to modify the decree in other respects than striking the two cows and the calf. Obviously the trial court knew how to modify the decree if that is what was intended.

Once the court modified the decree as it did by striking the two cows and the calf from the property awarded to the appellee the appellant could not be found to have violated the terms of the decree. Since they were not awarded to the appellee under the decree as modified, the sale of the livestock by the appellant was not improper. This simple fact for me would resolve the question of any possible civil contempt because there was no court order than extant with which the appellant had not complied, and consequently there was no potential for either coercive or remedial effect with respect to the court's finding of contempt. Even in its pronouncement of its decision the trial court first modified the decree and then proceeded to discuss contempt.

Referring again to the remarks of the court at the time that it announced its

decision, as quoted in the majority opinion, it is clear that the district judge was distressed with the appellant because the judge felt she had misled the court. That situation perhaps has potential for a finding of criminal contempt, but the teaching of *Horn v. District Court, Ninth Judicial District,* Wyo., 647 P.2d 1368 (1982), is that the court was without any jurisdiction to punish the appellant for criminal contempt by awarding monies to the appellee.

For these reasons I am satisfied that the judgment of the district court with respect to the matter of contempt must be reversed.

RAPER, Justice, Retired, dissenting.

I dissent.

There was no criminal contempt. There was no fine or penalty. The trial court in effect merely adjusted the decree distributing property between the parties. Where the cows and calf had been set over to appellee as part of the property division of the marital property, the court substituted cash, required the appellant to conform with the original decree in other particulars, and awarded attorney's fees as he was authorized to do.

While the trial judge held appellant in contempt, his order allowed her to purge the contempt by following the court's directive as indicated. To "purge" means to exonerate from contempt. Black's Law Dictionary, 5th ed. (1979). It was not a penalty or fine to award appellee the cows and calf in the first place. It can hardly be considered punishment of appellant to require payment for their value instead when discovered that the animals belonged to someone else. She ignored the terms of the decree by selling the cows and calf. Before doing so, she should have petitioned the court for a modification. A court must be able to enforce its decrees. I cannot see that appellant has been hurt at all. She should pay attorney's fees to appellee for appellant's creating the problem in the first place and requiring him to come back into court. Attorney's fees are permitted by § 20–2–111, W.S.1977.

In the light of the decision of the majority which now creates confusion in the law of contempt by converting civil contempt into criminal contempt, appellee is entitled to a modification of the divorce decree to recover the value of the cows and his attorney's fees.

I would have affirmed.