**Robert W. HORN, Appellant (Defendant),**

v.

**DISTRICT COURT, NINTH JUDICIAL DISTRICT, Appellee (Plaintiff),**

a contempt proceeding originating in:

**John E. BAINE, Jr., (Plaintiff),**

v.

**COWBOY BAR OF JACKSON HOLE, INC., a Wyoming Corporation, David Hauser, Rod Grathwal and Mark Watkins, (Defendants).**

No. 5653.

Supreme Court of Wyoming.

July 15, 1982.

Don W. Riske, Cheyenne, for appellant, and Robert W. Horn, pro se.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Allen C. Johnson, Sr. Asst. Atty. Gen., Cheyenne, and Michael J. Sullivan and William F. Downes of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

The appellant, Robert W. Horn, while serving as the attorney for a plaintiff in a negligence action was summarily convicted of contempt of court during a trial being conducted in Teton County District Court. Acting under the authority of Rule 41(a), W.R.Cr.P.,[1] the trial judge determined that appellant was in contempt and ordered him to pay a fine of $100 and to pay all costs incurred by the other party to the lawsuit, which costs amounted to $36,927.18. The judge also declared a mistrial. As a result of the trial court's action, the appellant filed the present appeal and he words the issues for review as follows:

"I. MAY AN ORDER SUMMARILY FINDING AN ATTORNEY IN CONTEMPT OF COURT BE SUSTAINED WHERE THE TRIAL COURT HAS FAILED TO COMPLY WITH THE PROVISIONS OF RULE 41(a) OF THE WYOMING RULES OF CRIMINAL PROCEDURE?

"II. WHEN DURING AN IN–COURT DEMONSTRATION TO SHOW THE UNTRUTH OF THE TESTIMONY BY A WITNESS, AN ATTORNEY PRECIPITATES PHYSICAL CONTACT WITH THE WITNESS, DOES THIS CONDUCT CONSTITUTE SUCH A PATENTLY CONTEMPTUOUS MATERIAL

---

1. Rule 41, W.R.Cr.P., provides:

"(a) *Summary disposition.*—A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts, shall be signed by the judge and entered of record.

"(b) *Disposition on notice and hearing.*—A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant, or on application of the prosecuting attorney, or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. Upon arrest the defendant shall be entitled to admission to bail as provided in these rules. If the contempt charge involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

"(c) *Jury trial.*—Sentence to imprisonment upon a conviction on a charge of criminal contempt shall not exceed a term of six (6) months unless the defendant shall have been afforded the right to trial by jury on the charge."

OBSTRUCTION OF THE JUDICIAL PROCESS THAT RESORT TO SUMMARY CONTEMPT PROCEDURES ARE NECESSARY TO VINDICATE THE AUTHORITY AND DIGNITY OF THE COURT?

"III. ARE THE *DUE PROCESS GUARANTEES* CONTAINED IN THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND IN ARTICLE 1 SECTION 6 OF THE CONSTITUTION OF THE STATE OF WYOMING VIOLATED WHERE AN ATTORNEY IS SUMMARILY CONVICTED OF CONTEMPT OF COURT AND FINED THIRTY SEVEN THOUSAND TWENTY SEVEN DOLLARS AND EIGHTEEN CENTS ($37,027.18) WITHOUT REASONABLE NOTICE OF THE SPECIFIC CHARGES OR A FORMAL HEARING TO REFUTE THE TRIAL COURT'S ALLEGATION OF CONTEMPT?

"IV. DOES THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES GUARANTEE THE RIGHT TO JURY TRIAL FOR A CRIMINAL CONTEMPT PUNISHED BY A FINE OF THIRTY SEVEN THOUSAND TWENTY SEVEN DOLLARS AND EIGHTEEN CENTS ($37,027.18)?

"V. MAY AN ATTORNEY BE SUMMARILY CONVICTED OF CRIMINAL CONTEMPT WHERE THE TRIAL COURT HAS FAILED TO GIVE HIM NOTICE OR WARNING THAT HIS CONDUCT IS IMPERMISSIBLE AND SANCTIONS MAY BE IMPOSED FOR ITS REPETITION?

"VI. DOES DUE PROCESS OF LAW REQUIRE THAT A NEW AND IMPARTIAL JUDGE HEAR A CRIMINAL CONTEMPT CITATION WHERE THE TRIAL JUDGE HAS BECOME SO EMBROILED WITH THE ATTORNEY AND PROVOKED BY THE CONDUCT THAT HE CANNOT MAINTAIN THE CALM DETACHMENT NECESSARY FOR FAIR ADJUDICATION?

"VII. HAS AN ATTORNEY BEEN SUBJECTED TO DOUBLE JEOPARDY WHERE HE HAS BEEN SUMMARILY CONVICTED OF CRIMINAL CONTEMPT AND FINED ONE HUNDRED DOLLARS ($100.00) WHEN, AFTER PAYMENT OF THAT FINE, AND WITHOUT ADDITIONAL CONTEMPTUOUS CONDUCT ON HIS PART, THE TRIAL COURT IMPOSES AN ADDITIONAL PENALTY OF THIRTY SIX THOUSAND NINE HUNDRED TWENTY SEVEN DOLLARS AND EIGHTEEN CENTS ($36,927.18)?

"VIII. DID THE TRIAL COURT EXCEED THE REASONABLE BOUNDS OF ITS DISCRETION THROUGH IMPOSITION OF FINES TOTALLING THIRTY SEVEN THOUSAND TWENTY SEVEN DOLLARS AND EIGHTEEN CENTS ($37,027.18) FOR A SINGLE CONTEMPT OF COURT CITATION?

"IX. DID THE TRIAL COURT ABUSE ITS DISCRETION THROUGH A *SUA SPONTE* DECLARATION OF A MISTRIAL WHICH WAS NEITHER EXPRESSLY NOR IMPLIEDLY CONSENTED TO BY THE PARTIES AND WHERE THE TRIAL COURT FAILED TO SOLICIT ALTERNATIVE SUGGESTIONS FROM THE PARTIES?"

While the appellant raises a number of contentions, his principal focus is on the propriety of the trial judge's invocation of the powers vested by Rule 41(a), W.R.Cr.P., and the imposition of the $37,027.18 fine. With this in mind, we view the pertinent issues for review as follows:

1. Did the trial judge act properly in finding the appellant in contempt under Rule 41(a), W.R.Cr.P.?

2. Did the circumstances present below warrant the imposition of the $37,027.18 fine which was levied against appellant?

In answering these contentions we will affirm the appellant's contempt conviction and reverse that portion of the fine payable to the other party in the underlying lawsuit.

## FACTS

Appellant was representing the plaintiff in a lawsuit in which his client was suing the Million Dollar Cowboy Bar in Jackson, Wyoming, together with several employees of the establishment. The plaintiff had alleged that he suffered severe injuries as a result of a beating he received at the hands of several doormen who had ejected him from the bar.[2]

During the trial attorney Horn asked one of the defendants to step down from the witness chair so that appellant could perform a demonstration for the jury. It would seem that attorney Horn intended to demonstrate that the witness had testified to an impossible fact situation. The witness was asked to assume a position similar to the position he had assumed on the night of the incident, and to demonstrate to the jury how he, the defendant, had turned and swung his fist at the plaintiff after plaintiff had allegedly kicked him from behind. The witness was instructed to react upon hearing Mr. Horn say the word "Now." Suddenly, appellant Horn gave the signal and, without warning, kicked the witness with enough force to drive him into the jury box. The record reflects that the following dialogue took place:

"MR. SULLIVAN: Your Honor, I object.
"MR. DOWNES: I object.
"THE COURT: That's sustained. That's highly improper. That's one of the most disgusting things I have witnessed in the courtroom.
"Take the jury out.
"(Whereupon, the jury leaves the courtroom.)
"THE COURT: Let the record reflect that the jury is out. Let the record also reflect that counsel just kicked this witness in the back in front of the jury box with sufficient force to drive him from where he was into the jury box and over the rail. *One of the most improper, highly contemptuous matters I have ever witnessed in a courtroom.*
"Do you have something to say, Mr. Sullivan?

"MR. SULLIVAN: I just wanted to make sure the record reflected what's happened and what's taking place and the Court is doing that so—
"THE COURT: *The behavior that just occurred is highly disruptive to these proceedings. It's contemptuous and I won't stand for it, and I fine you $100 and you pay the Clerk right now.*
"Court's in recess.
"MR. HORN: Your Honor, may I say something?
"THE COURT: After I cool off.
"(Whereupon, a brief recess was had.)" (Emphasis added.)

During the short recess the appellant paid the $100 fine levied by the trial judge.

Some 15 minutes later the judge declared a mistrial and ordered appellant to pay "each and every cost" incurred by the defendants up to that point of the trial. At this juncture, appellant apologized to the court and attempted to explain that his only purpose was to represent his client zealously and to refute the witness' story. As noted earlier, the costs assessed against appellant totaled $36,927.18.

## CONTEMPT

Before discussing the relevant aspects of the case at bar, it may be helpful to first examine the law of contempt.

Contempts of court are divided into a number of categories. They are usually classified as either civil or criminal in nature, although a given contemptuous act can involve both classes. It is clear, however, that the type of punishment to be imposed is the factor that decides whether a civil or criminal contempt has been committed. As stated by the United States Supreme Court in *Nye v. United States*, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941):

"‘ * * * While particular acts do not always readily lend themselves to classification as civil or criminal contempts, a contempt is considered civil when the punishment is wholly remedial, serves

**2.** The actual issues to be tried in the underlying lawsuit are not before us in this appeal.

only the purposes of the complainant, and is not intended as a deterrent to offenses against the public.'" 313 U.S. at 42, 61 S.Ct. at 812 (citing from *McCrone v. United States*, 307 U.S. 61, 64, 59 S.Ct. 685, 686, 83 L.Ed. 1108).

Thus, a civil contempt is generally intended to compel a party to comply with a lawful court order, while a criminal contempt is punitive in character and is enforced so that the authority of the law and the court will be vindicated. *Tucker v. State*, 35 Wyo. 430, 251 P. 460 (1926); *Laramie National Bank v. Steinhoff*, 7 Wyo. 464, 53 P. 299 (1898). Another way of distinguishing between the two is to say that the primary purpose of criminal contempt is to punish, while the primary purpose of civil contempt is to coerce. *City of Wilmington v. General Teamsters Local Union 326*, Del.Supr., 321 A.2d 123 (1974).

▮ Contempts are also categorized depending upon the way that they occur. In *Spriggs v. Pioneer Carissa Gold Mines, Inc.*, Wyo., 378 P.2d 238, 240 (1963), we spoke of these distinctions:

> "Generally speaking, contempts of court are classified as either direct or constructive, the latter being dependent upon whether the contemptuous conduct is committed in the presence or out of the presence of the court."

Thus, not only may a contempt of court be of a criminal or civil nature but it also can be either a direct contempt or a constructive, indirect one. Direct contempts are those committed in the court's presence and constructive contempts are those committed outside of the hearing or view of the judge.

## CHARACTERIZATION OF THIS CASE

At oral argument a question was raised by the parties concerning the proper designation of the contempt in this case, keeping in mind that the major portion of the fine assessed was ordered payable to the defendants in the litigation that was under way when the contempt occurred.

▮ A review of the facts leads to the conclusion that appellant's conduct can only be identified as direct criminal contempt— if it is to be assumed that Mr. Horn's conduct was contemptuous at all.[3] We say this because the challenged conduct occurred during a trial, before the trial judge, and punishment was imposed immediately. Given these circumstances, it must be assumed that the trial judge was responding to an act which he perceived to be disruptive of order and in contravention of the dignity and power of the court and that he imposed the fine as a form of punishment for an act which disrupted the orderly administration of justice in his court, *Townes v. State*, Wyo., 502 P.2d 991 (1972), and, as such, he was acting in response to an act perceived by the judge as a *direct criminal contempt*.

▮ Notwithstanding this conclusion, we consider it important to discuss the reasons why this case cannot be said to involve a civil contempt. As indicated earlier, civil contempt is generally calculated to compel or coerce a party into complying with a lawful order of the court. *Spriggs v. Pioneer Carissa Gold Mines, Inc.*, supra. Here, even though the underlying action was of a civil nature, there was no lawful order of the court extant with which appellant Horn had failed to comply. Nor is it determinative that most of the fine was payable to the opposing party in the suit where the contempt occurred. This is so because the record reflects that the trial judge imposed all of the fine for punitive reasons rather than for the purpose of vindicating the rights of the defendants below. It is the obligation of appellate courts to decide whether a contempt is civil or criminal based on the reasons why a particular penalty is imposed. See: *Shillitani v. United States*, 384 U.S. 364, 369, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966); *Southern Railway Company v. Lanham*, 403 F.2d 119 (5th Cir. 1968). The facts of this case require us to assume that we are here concerned with a challenge to a conviction for direct crimi-

3. The question whether, under the circumstances, appellant's conduct could properly be punished as contemptuous is considered in the next section.

nal contempt. As discussed by Wright in his treatise on federal criminal procedures,[4]

"A criminal contempt proceeding need not arise out of a criminal action. A person may be punished for criminal contempt for defying the authority of the court in a civil action." 3 Wright, Federal Practice and Procedure, § 702, p. 148.

With this in mind, we turn to the specific issues.

### DID THE TRIAL JUDGE PROPERLY INVOKE RULE 41(a), W.R.Cr.P.?

As we observed early in this opinion, appellant's first challenge focuses on whether or not the trial judge properly invoked his powers vested by Rule 41(a), W.R.Cr.P., supra n.1. We are of the opinion that he did.

 Rule 41(a), W.R.Cr.P., provides that a judge is authorized to punish summarily any criminal contempt when he is able to certify that he either saw or heard the contemptuous conduct or that said act or acts were committed in his presence. The rule also requires that an order reciting a finding of contempt should set forth the facts constituting the contempt and shall be signed by the judge and entered of record. Rule 41(a), supra, n.1. In essence, the rule embodies a power that for decades has been recognized as a vested power of the judiciary. *In Application of Stone*, 77 Wyo. 1, 305 P.2d 777 (1957), we recognized that all courts have the inherent power to punish for contempt and that any type of contempt which is committed in the face of the court is punishable summarily. 305 P.2d at 777–784.[5] The United States Supreme Court long ago recognized this inherent power in *Ex Parte Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888), when it stated:

"The second and third of these grounds may be dismissed as immaterial in any inquiry this court is at liberty, upon this original application, to make. For, upon the facts recited in the order of September 3, showing a clear case of contempt committed in the face of the Circuit Court, which tended to destroy its authority, and, by violent methods, to embarrass and obstruct its business, the petitioner was not entitled, of absolute right, either to a regular trial of the question of contempt, or to notice by rule of the court's intention to proceed against him, or to opportunity to make formal answer to the charges contained in the order of commitment. It is undoubtedly a general rule in all actions, whether prosecuted by private parties, or by the government, that is, in civil and criminal cases, that 'a sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.' *Windsor v. McVeigh*, 93 U.S. 274, 277 [23 L.Ed. 158]. *But there is another rule, of almost immemorial authority, and universally acknowledged, which is equally vital to personal liberty and to the preservation of organized society, because upon its recognition and enforcement depend the existence and authority of the tribunals established to protect the rights of the citizen, whether of life, liberty, or property, and whether assailed by the illegal acts of the government or by the lawlessness or violence of individuals. It has relation to the class of contempts which, being committed in the face of a court, imply a purpose to destroy or impair its authority, to obstruct the transaction of its business, or to insult or intimidate those charged with the duty of administering the law. Blackstone thus states the rule: 'If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination. \* \* '* "* (Emphasis added.) 128 U.S. at 306–307, 9 S.Ct. at 80.

---

**4.** Federal authorities will be cited throughout this opinion because Rule 41(a), W.R.Cr.P., models Rule 42 of the Federal Rules of Criminal Procedure and thus the federal authorities are highly persuasive.

**5.** See also: *In Re Mayne's Estate*, Wyo., 345 P.2d 790 (1959).

The above quotation makes it clear that as long as the act committed in the face of the court is of a contemptuous nature, the court can constitutionally punish such act in a summary manner.[6] It is also well settled that, with regard to direct criminal contempts, concepts of due process and the right to trial by jury[7] give way to the powers of courts to protect their dignity and authority for the benefit of the public. We noted this latter principle in *Application of Stone*, supra, 305 P.2d at 784, where we cited the following from an Annotation at 99 L.Ed. 892, 893:

> " ' * * * the requirements of due process are less strict in the case of direct contempt committed in the actual presence of the court than they are in the case of constructive contempt * * *.' "

These authorities establish that Rule 41(a), W.R.Cr.P., can properly be invoked by a trial judge when he observes a contemptuous act, and punishment can be imposed in a summary manner.

In his brief appellant raises several challenges to the trial judge's invocation of Rule 41(a). First, Mr. Horn contends that his actions could not properly be characterized as contemptuous. Secondly, he claims the summary punishment denies him due process of law, and, lastly, he argues that the trial judge's order of contempt must be set aside because its entry was not preceded by the proper and necessary procedures. We are of the view that only two of these contentions warrant consideration since, as discussed in the preceding paragraph, the invocation of summary contempt powers is not per se violative of notions of due process. Therefore, in view of the conclusions we reach below, we do not find due-process rights of appellant to have been violated.

Appellant argues that the trial judge erred in finding him in contempt because it was never his intention to disrupt the courtroom proceedings when he forcefully struck the witness. It is Mr. Horn's position that his intent was merely to prove the witness wrong or to impeach his credibility, and that he was simply discharging his obligation to represent his client zealously. We cannot agree, because the record vividly reflects that appellant's attempted demonstration was highly improper and that it did truly impose upon the dignity and order of the court.

■■■ Appellant concedes that when reviewing an appeal from a contempt citation we should not overturn the trial court's action except for abuse of discretion since the inherent power to summarily punish for contempt is securely vested within the discretion of a trial judge. *Badley v. City of Sheridan*, Wyo., 440 P.2d 516 (1968). Notwithstanding his recognition of this rule, appellant argues that, because he did not intend to be contemptuous, his conviction cannot stand. Mr. Horn is correct when he says that criminal contempt necessarily implies an element of intent that must be proved before a contempt citation can be upheld. *Hawk v. Cardoza*, supra at 734; *Murray v. Murray*, 60 Haw. 160, 587 P.2d 1220 (1978); *State v. Browder*, Alaska, 486 P.2d 925 (1971). To determine whether a particular act is contemptuous, courts look to whether the complained-of acts actually obstructed the proceedings, and it has been said that:

> " . . . [A]n attorney possesses the requisite intent only if he knows or reasonably should be aware in view of all the circumstances, especially the heat of the controversy, that he is exceeding the outermost limits of his proper role and hindering rather than facilitating the search for truth." *Hawk v. Cardoza*, supra, 575

---

6. For other cases recognizing this principle see: *Bessette v. W. B. Conkey Co.*, 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997 (1904); *In Re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *Hawk v. Cardoza*, 575 F.2d 732 (9th Cir. 1978); *Ong Hing v. Thurston*, 101 Ariz. 92, 416 P.2d 416 (1966); *In re Hallinan*, 71 Cal.2d 1179, 81 Cal.Rptr. 1, 459 P.2d 255 (1969); *Pennington v.*

*Chaffee*, 1 Kan.App.2d 682, 573 P.2d 1099 (1977).

7. As to the right to trial by jury in a criminal contempt proceeding it is the rule that as long as the penalty imposed is commensurate with a petty offense, then no jury-trial right attaches. See *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

F.2d at 734–735, citing *In re Dellinger*, 461 F.2d 389, 400 (7th Cir. 1972).

Given this standard, we are of the opinion that the record in this case plainly reflects the contemptuous character of appellant's act. Rather than inform the court or opposing counsel of the force to be used prior to undertaking the unusual demonstration, appellant chose a course of action which he could reasonably foresee would be disruptive of the court process. The force used in the demonstration resulted in an intrusion into the jury box—"driving [the witness] over the rail." The resulting immediate objections by counsel and the reaction of the court reflect the surprise and disruption occasioned by the force applied in the demonstration. We do not find any abuse of discretion on the part of the trial judge in finding appellant in contempt. His act of striking the witness obstructed the orderly flow of the trial and materially infringed on the dignity and authority of the court. Counsel went far beyond the scope of his authorized role as an advocate.

Mr. Horn also urges that his contempt conviction should be reversed because the trial judge failed to follow the proper procedures mandated by Rule 41(a), W.R.Cr.P. In this respect, he contends that the trial judge did not set forth the underlying facts relied upon in his order of contempt and also that the filing of a certification of contempt and order were too far removed from the proceeding itself.[8] In support of this position, Horn relies on *United States v. Marshall*, 451 F.2d 372 (9th Cir. 1971). In that case, the court, in construing Rule 42(a), F.R.Cr.P., said that in certifying a contempt and entering an order the court must recite or point to the specific facts upon which the conviction rests. 451 F.2d at 375. It must also be clear from the

record that the contumacious conduct did, in fact, occur directly before the court; however, the required certification need not be entered by the judge immediately and those requirements of Rule 42(a) are merely designed to aid appellate review. 451 F.2d at 377. The certification requirements are not designed to give the defendant notice or to frame an issue to be tried. Id. We followed a similar rule in *Townes v. State*, supra, where we stated:

> "A court's power to punish for contempt is a necessary and integral part of the independence of the judiciary. Nevertheless, where there has been a criminal contempt and the trial court makes a summary disposition under (a) of Rule 41 it 'must be meticulously careful to observe * * * [procedural] safeguards,' *Yates v. United States*, 9 Cir., 227 F.2d 848, 850; *Widger v. United States*, 5 Cir., 244 F.2d 103, 107; * * *." 502 P.2d at 993.

In *Townes* we were concerned with the need for the trial judge to file an order which certified in specific terms the facts supporting the contempt citation. There, however, we did not reverse the conviction where the judge had filed an inadequate certificate under Rule 41(a), W.R.Cr.P., but rather we held that the judge had decided to hold a hearing on the contempt charge and therefore was required to operate under the provisions of Rule 41(b), supra n.1. We also noted in *Townes* that the need for the filing of a certificate, or for the judge to certify the contempt, is not an immediate one. 502 P.2d at 993. The essential requirement of Rule 41(a), W.R.Cr.P., is that the order or certificate when filed must specifically recite the facts upon which conviction rests, and it must be clear, from the record, that the contemptuous conduct took place in the presence of the court. *In*

**8.** Appellant focuses on the fact that the actual order of contempt was not entered by the trial judge until January 19, 1982, some 63 days after he was summarily found in contempt on November 17, 1981. However, a portion of this delay occurred because the trial judge had entered an order on December 7, 1981, certifying the contempt and setting a precondition on the plaintiff's right to retry his case, which we ordered corrected on January 14, 1982. The order of this court resulted in the filing of the January 19, 1982, order from which this appeal is taken.

re *Williams*, 509 F.2d 949 (2nd Cir. 1975); *Pietsch v. President of United States*, 434 F.2d 861 (2nd Cir. 1970); 3 Wright, Federal Practice and Procedure, § 708.

■ Turning to the case at bar, the judge's order makes clear those things that transpired at the trial and that such conduct as is charged to be contemptuous took place directly before the judge. The transcript attached to the order specifically sets out the facts supporting appellant's conviction, and we are of the opinion that Rule 41(a), W.R.Cr.P., has been complied with in all necessary respects. Thus, although the delay in entering the order appealed from was unfortunate, we do not find that appellant's rights were affected in any way, nor was our review of the matter curtailed. We therefore hold that the trial judge properly invoked Rule 41(a) and the conviction of contempt is affirmed.

## THE FINE

■ As noted in the discussion of the facts, the trial judge imposed a $100 fine on appellant immediately after summarily instituting the contempt proceedings, and then after a short recess appellant was further assessed with all the costs incurred by the defendants in the underlying action. This sum amounted to $36,927.18. In his brief, appellant advances numerous arguments concerning the imposition of such a heavy fine.[9] However, he is essentially contending that the trial judge was without authority to impose a civil fine. We agree. The law plainly requires a reversal of the $36,927.18 fine levied against appellant because the trial judge acted outside of the scope of his powers in awarding compensation to the defending litigants in a criminal contempt proceeding. We affirm the $100 fine initially entered because it does not

evidence an abuse of discretion. *Badley v. City of Sheridan*, supra.

■ The law is well settled that criminal contempt proceedings are designed to protect the integrity of the courts and they are instituted to preserve public confidence in judicial tribunals. As such, the public is the interested party rather than any particular individual suitor. This principle was set out by the United States Supreme Court in *Bessette v. W. B. Conkey Co.*, 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997 (1904), when the court stated:

> "Manifestly if one inside of a courtroom disturbs the order of proceedings, or is guilty of personal misconduct in the presence of the court, such action may properly be regarded as a contempt of court, *yet it is not misconduct in which any individual suitor is specially interested. It is more like an ordinary crime which affects the public* * * *."* (Emphasis added.) 194 U.S. at 329, 24 S.Ct. at 667.

Considering the nature of criminal contempt, the courts have established the rule that, since the purpose of fines for criminal contempt is to punish, the proper aggrieved party is the state and not a private litigant who is the beneficiary of an award in a civil contempt proceeding. See: *Nye v. United States*, supra; *United States v. United Mine Workers of America*, 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *State ex rel. Payne v. Empire Life Ins. Co.*, Ala., 351 So.2d 538 (1977); *State v. Unique Ideas, Inc.*, 44 N.Y.2d 345, 405 N.Y.S.2d 656, 376 N.E.2d 1301 (1978); *Brown v. Brown*, 183 Colo. 356, 516 P.2d 1129 (1973). This general rule concerning the proper allocation and power of the courts to punish for criminal contempts was discussed as follows in *Hyde Construction Company, Inc. v. Koehring Company*, 387 F.Supp. 702 (S.D. Miss.1974):

---

**9.** Appellant not only contends that the fines amounted to an abuse of discretion but also that they were imposed in violation of his rights to due process and trial by jury, and that they violated concepts of double jeopardy. As we have previously noted, appellant under the circumstances of this case received the due process to which he is entitled (see: *Spriggs v. Pioneer Carissa Gold Mines, Inc.*, supra) and in light of our conclusions set forth infra, we will not address the jury-trial and double-jeopardy claims.

"Fines in criminal contempt are wholly punitive and unrelated in amount to any private damages caused by the contemptuous conduct. Fines in purely criminal contempt, moreover, are not allocable to private litigants, since it is the authority and dignity of the court which is endangered, not private interests. We are aware that in some cases involving criminal contempt proceedings fines have been paid over to the opposing party, or divided between the court and the private litigants. It is plain, however, that in each such instance the criminal contempt conviction was accompanied by a valid civil contempt decree so that allocation of fines to private litigants was based solely on the civil aspect of the dual proceeding. We find no instance in which any court, *in exclusively criminal contempt proceedings,* has allowed private litigants to share in a fine which is punitive and devoid of remedial purpose." (Footnotes omitted and emphasis in original.) Id. at 715–716.

 The rule to be derived from this body of case law is that although a single act can be both a criminal and civil contempt, when the act is punished as a criminal contempt, the court has no power to impose a fine the purpose of which is to punish but which in fact inures to the benefit of a private litigant. The crime is against the court as an agency of the state and not a private litigant, and any fine imposed must therefore and of necessity inure to the benefit of the court and the state. *Brown v. Brown,* supra; *State v. Unique Ideas, Inc.,* supra. From this it is to be concluded that the trial judge erred in requiring the appellant to pay all costs to the defendants in the underlying lawsuit. He had no power to impose such a fine, since, as hereinbefore discussed, appellant's act can only be regarded as a criminal contempt.

We reverse so much of the court's order as would have the effect of fining the appellant $36,927.18 and affirm such of the order as does impose a $100 fine for criminal contempt.

Affirmed in part, reversed in part.