**BI–RITE PACKAGE, INC., Petitioner,**

v.

**DISTRICT COURT OF the NINTH JUDICIAL DISTRICT OF FREMONT COUNTY and Robert B. Ranck, Judge thereof, Respondents.**

**John PHELPS, Katherine Phelps, Petitioners,**

v.

**DISTRICT COURT OF the NINTH JUDICIAL DISTRICT OF FREMONT COUNTY and Robert B. Ranck, Judge thereof, Respondents.**

**BI–RITE PACKAGE, INC., a Wyoming corporation, Appellant (Defendant),**

**Reno Long, d/b/a Star Lite Lanes & Lounge; Fremont County, Wyoming; Town of Riverton, Wyoming; and William G. Keith (Defendants),**

v.

**John PHELPS and Katherine Phelps, Appellees (Plaintiffs),**

**Jack Little Whiteman (Plaintiff).**

**Nos. 86–129, 86–135 and 86–163.**

Supreme Court of Wyoming.

April 15, 1987.

---

Richard R. Wilking (argued), and Cameron S. Walker of Schwartz, Bon, McCrary & Walker, Casper, for petitioner in Case 86–129 and appellant in Case 86–163.

William F. Fix and Robert N. Williams, Jackson, for petitioners in Case 86–135; submitted on briefs.

Allen C. Johnson, Sr. Asst. Atty. Gen., for respondents in Cases 86–129 and 86–135 and appellees in Case 86–163.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

This appeal is from an order requiring that plaintiffs, John and Katherine Phelps, and defendant, Bi-Rite Package, Inc., pay $5,000 (each side paying $2,500) to the Clerk of the District Court, Ninth Judicial District, Wyoming, as a sanction for late settlement of a personal injury civil action.

We reverse.

The issues presented by appellants for our review are whether the court had power to impose sanctions for failure to timely settle, whether the pretrial conference order informing the parties that costs might be assessed for late settlement was sufficiently definite to support sanctions, whether the imposition of sanctions violated Art. I § 8 of the Wyoming Constitution, and whether the court abused its discretion in imposing sanctions.

## FACTS

In this case for trial to a jury, Phelps sought to recover damages against Bi-Rite and other defendants for personal injuries resulting from an automobile accident. At a pretrial conference, held November 15, 1985, the court ordered that a settlement conference be held March 10, 1986, and, after setting a trial date of April 14, 1986, stated in its written order:

> "Two weeks are set aside for the trial of this case. This means in the event settlement occurs at a late date, costs just for the use of the courtroom would be $10,-000."

On March 5, 1986, the court entered an order vacating the trial date of April 14 and continuing the case until further order of the court. On April 2, 1986, the court entered an order setting the case for trial on May 12, 1986, and on April 22, 1986, entered an additional order confirming the trial date of May 12, 1986, and setting aside four and one-half days for the trial of the case. On April 28, 1986, Phelps settled with defendants, Town of Riverton and Fremont County, for the sum of $120,000. On May 6, 1986, Phelps settled with de-

fendant Star Lite Lanes & Lounge for $13,-250. Phelps offered to settle with Bi-Rite for the sum of $90,000. On May 7, 1986, Bi-Rite countered with an offer to settle its part of the case for the sum of $13,250. On May 8, 1986, Phelps offered to settle with Bi-Rite for $50,000, but indicated that they would accept $30,000 in settlement. That same day, May 8, 1986, Phelps and Bi-Rite settled the case between them for a payment of $29,000. The settlement was concluded four days before trial, and counsel immediately informed the court of the settlement. The clerk of court called all of the jurors and advised them the case had been settled and that they need not appear for jury duty. As a result, juror fees were not incurred.

On the same date, May 8, 1986, the court set a hearing on sanctions to be imposed for late settlement by sending the following Mailgram to Phelps and Bi-Rite:

"Reference Fremont County # 23227. This case was set for jury trial for one week starting Monday May 12, 1986 at 1:30 pm. The court was advised at 3 pm Thursday May 8, 1986 that the case settled. Evidently counsel are of the opinion this court does not mean what it says when it sets a settlement date and affirmatively advises what will happen if the case is settled after that date. Therefore it is ordered that Richard Wilking and Rob Williams and any others they would like to have appear on their behalf shall personally appear in the courtroom of this court at Lander, Wyoming Monday May 12, 1986 at 1:30 pm to show cause if any they have why the court should not impose sanctions, attorney fees, etcetera as set forth in the record of this case."

The hearing commenced with the court stating:

"As I've stated and as you know, I moved the trial to May 12th and I set aside five days rather than ten days. So the record is clear that the date to settle was March 10 [this was the date of the court-ordered settlement conference]. It doesn't take any thought at all to understand that the Thursday before the trial,

which is to start Monday, is a late settlement date."

And the court then further stated:

"Now, I like to have some control over my docket, but it is abundantly apparent I have none. I have attorneys deciding when I'm going to try cases; I have babies deciding about my continuances. A great deal goes into just the scheduling with Judge Kail and Judge Denhardt to use these courtrooms."

And, finally, the court informed the parties:

"So the courtroom lies vacant. I'm aggravated because—not mad, I'm not mad. Aggravated. And I want to tell you why I'm really aggravated. This might surprise you. Because now I've got some litigant who had the authority to settle this case who I don't even know controlling my docket."

Phelps and Bi-Rite then each informed the court concerning the course of settlement negotiations, reciting the offers, counteroffers, and discussions in some detail. The court was advised that Phelps had settled with the primary defendants on April 28 for the sum of $120,000, with Star Lite Lanes & Lounge on May 6 for $13,250, and that the last party-defendant, Bi-Rite, had settled with Phelps on May 8 for the sum of $29,000. At the conclusion of the hearing, the court stated:

"Well, I appreciate that and I appreciate your candor and I'm sure that you're both full of veracity to the endth degree.
* * *

"It's the judgment of this Court that you each be assessed $2,500. Pay it to the Clerk of the Court. Both sides, Bi-Rite and the plaintiffs."

To say that much was wrong with the imposition of sanctions here is a gross understatement. There was no finding of bad faith, fault or abuse of the process by the parties or their attorneys; the amount assessed was described as costs in the pretrial conference order; the $5,000 assessed was not an item of cost established by either statute or rule; the $5,000 assessed had no evidentiary basis; the $5,000 assessed was payable to the clerk of court rather than a party; the parties were never

advised that the last date to settle was March 10, 1986, which was two months before trial; the court never advised the parties as to what constituted a "late settlement"; the order of the court, after hearing, described the penalty as a sanction rather than costs as stated in the pretrial order; the primary defendants settled April 28th and Star Lite Lanes & Lounge settled May 6th, which was long after the March 10th last date to settle, but were not sanctioned for late settlement.

## ASSESSMENT OF COSTS

Initially in its pretrial conference order, the court informed the parties that two weeks had been set aside for trial and that in the event of a "late settlement," *costs* would be assessed against them in the amount of $10,000 which was calculated at $1,000 a day for the use of the courtroom. It is abundantly clear that whatever the $5,000 assessment against the parties might be, it could not be costs.

■ Costs were unknown at common law and, therefore, not awarded to either party. Costs are recoverable and may be awarded only if authorized by statute and then may be awarded only to parties to the litigation in amounts supported by evidence as having been incurred and reasonable. *Weaver v. Mitchell,* Wyo., 715 P.2d 1361 (1986); *Roberts Construction Company v. Vondriska,* Wyo., 547 P.2d 1171 (1976); 20 Am.Jur.2d Costs, §§ 4 and 5.

■ The penalty assessed by the court here cannot be sustained as costs. There is no statute or rule providing for an assessment of costs of $1,000 a day for the use of the courtroom. The costs assessed were not awarded to a party but to the clerk of the district court. They are not supported by evidence of reasonableness or by any evidence at all. If the award were clearly of costs, as designated in the pretrial conference order, it could not stand and there would be no need for us to proceed further with this case.

## SANCTIONS FOR LATE SETTLEMENT

■ In the order entered after hearing, the court designated the $5,000 penalty as-

sessed against the parties as a *sanction* for late settlement of the case rather than assessment of costs. The only question we need now determine is whether the court possessed the power or authority to order the parties to pay to the clerk of the district court the sum of $5,000 as a sanction for late settlement.

Courts are vested with very great and far-reaching power to control their business and proceedings and to enforce their orders and process in conducting the business of a court. Courts must have these very great powers to ensure civility, orderly procedure, respect for the court as an institution and for its orders, and in the end an honest development of the facts of a controversy that will end in a just result. The court did not indicate the source of the power utilized in imposing sanctions in this case. We, therefore, begin our search for that power with a review of our rules which provide the penalties and sanctions that might be imposed against parties or their attorneys.

The Wyoming Rules of Civil Procedure, which contain provisions for sanctions or penalties, are as follows:

Rule 11, W.R.C.P., relating to signing and verification of pleadings, provides that a pleading signed with an intent to defeat the purpose of the rule may be stricken as sham and false, and for a willful violation of the rule or for the insertion of scandalous and indecent matter, an attorney may be subjected to appropriate disciplinary action.

Rule 37, W.R.C.P., provides that for a failure or refusal to make discovery in the answering of interrogatories, responding to requests for admissions, in giving depositions and in other discovery, the moving party may be awarded reasonable expenses and attorneys fees or the offending party held in contempt of court.

Rule 56, W.R.C.P., relating to summary judgments provides that the court may award reasonable expenses including attorneys fees against a party or attorney who files affidavits in bad faith or for

the purpose of delay and may also adjudge the party or attorney guilty of contempt.

Rule 70, W.R.C.P., pertaining to judgment for specific acts, permits the issuance of a writ of attachment against the property of the disobedient party to compel obedience and also allows the court to adjudge the party in contempt. Rule 41, W.R.Cr.P., provides for the disposition of criminal contempt summarily if committed in the presence of the court, otherwise upon notice and with bail if not in the presence of the court. There is no limit to the sentence for contempt that might be imposed except that if the sentence exceeds six months, a right of jury trial must be afforded.

Rule 41(b), W.R.C.P., empowers a court to dismiss an action for failure to prosecute or to comply with the rules of civil procedure or any order of the court.

There is nothing in either the Wyoming Rules of Civil Procedure or the Wyoming Rules of Criminal Procedure that vest in the court a power to impose as a sanction a penalty of $5,000, calculated at $1,000 per day for use of the courtroom, for failure to timely settle a case.

Rule 83, W.R.C.P., provides that:

"Each district court may from time to time make and amend rules governing its practice not inconsistent with these rules or applicable statutes."

The district courts adopted the Uniform Rules for District Courts of the State of Wyoming, the pertinent rules being: Rule 203, U.R.D.C., providing for dismissal of cases in which there is no substantial or bona fide action of record for a period of 90 days; Rule 601 concerning pretrial practice which requires that the parties shall discuss settlement; and Rule 901, U.R.D.C., which provides:

"The following may be imposed for violation of these rules: reprimand, monetary sanctions, contempt, striking of briefs or pleadings, dismissal of proceedings, costs, attorneys fees, or other sanctions."

It is agreed that the parties met and discussed settlement but did not settle at that time. In meeting and discussing settlement, the parties complied fully with District Court Rule 601. There is nothing in the Uniform Rules for District Courts that requires that the parties settle or that settlement occur at any specified time before trial. There was no violation of the Uniform Rules of the District Courts and, therefore, no authority under these rules for the imposition of sanctions for the failure to settle.

We have repeatedly recognized that the power of a court to punish for contempt is inherent in all courts of general jurisdiction, and we have said that such exists independently of any special or express grant of power. *Horn v. District Court, Ninth Judicial District,* Wyo., 647 P.2d 1368 (1982); *Townes v. State,* Wyo., 502 P.2d 991 (1972); *Matter of Estate of Mayne,* Wyo., 345 P.2d 790 (1959); *Application of Stone,* 77 Wyo. 1, 305 P.2d 777 (1957). Numerous statutes provide for contempt powers. The parties here, however, were not charged with contempt of court nor were the penalties assessed against them for contempt. The contempt power of the court, therefore, furnishes no support for the $5,000 penalty here assessed for late settlement.

## INHERENT POWERS OF THE COURT

If there is a power in the district court to require a payment of $5,000 to the clerk as a sanction for late settlement of the case, it does not exist in our statutes or rules and can only be supported as an exercise of an inherent power of the court. Cases which concern inherent powers of courts deal with the imposition of sanctions against both attorneys and parties.

They are equally relevant to the issues posed in this case and are discussed without distinction.

It is unquestioned that courts have inherent powers beyond those specified in rules and statutes that are absolutely necessary to the courts' ability to perform the functions for which they were created. The district court which presided in this case was established in Art. V, § 1 of the Wyoming Constitution, which provides:

"The judicial power of the state shall be vested in the senate, sitting as a court of impeachment, in a supreme court, district courts, and such subordinate courts as the legislature may, by general law, establish and ordain from time to time."

Article V, § 10 of the Wyoming Constitution confers on the district courts original jurisdiction of all causes and appellate jurisdiction from the county and justice of the peace courts. Article V, § 2 of the Wyoming Constitution vests appellate jurisdiction and superintending control in the Wyoming Supreme Court and provides:

"The supreme court shall have general appellate jurisdiction, co-extensive with the state, in both civil and criminal causes, and shall have a general superintending control over all inferior courts, under such rules and regulations as may be prescribed by law."

First it is said that courts possess an inherent power described as

"an extremely narrow range of authority involving activity so fundamental to the essence of a court as a constitutional tribunal that to divest the court of absolute command within this sphere is really to render practically meaningless the terms 'court' and 'judicial power.'" *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 562, 77 A.L.R.Fed. 751 (3rd Cir. 1985).

This power is essential to the separation of powers concept and allows a court to act notwithstanding contrary legislative direction. There is also an inherent power that is described as necessary to the efficient functioning and prompt and just disposition of litigation and business of the court. Thus, courts have an inherent power to summon witnesses and compel their attendance, to administer oaths, prevent abusive process, provide counsel for the indigent, correct records, relieve parties in default, discipline attorneys at law, and take other similar appropriate action. 20 Am.Jur.2d Courts § 79. Finally, there is an inherent power to take such action as is useful to the efficient functioning of the court. What is necessary and what is useful may be difficult to ascertain and subject to considerable disagreement. It has been said that "the notion of inherent power has been described as nebulous, and its bounds as 'shadowy,'" "not possible to locate with exactitude," and, therefore, should be exercised with great restraint and caution. *Eash v. Riggins Trucking, Inc., supra,* 757 F.2d at 561–562.

What is necessary in one jurisdiction or in certain circumstances might be only useful in others. Thus, where the time between filing a case and commencing a jury trial is five years, an inherent power utilized to expedite the court business might be termed necessary, whereas in a court such as those in Wyoming where the time between filing the complaint and commencing the trial to a jury is generally less than a year, an inherent power to push those cases faster might be termed only useful. A review of cases which discuss the inherent power of courts is instructive.

In *Link v. Wabash Railroad Company,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), there was recognized an inherent power to dismiss an action with prejudice for failure to prosecute the action. The Court noted that this inherent power had been expressly recognized in the Federal Rules of Civil Procedure, Rule 41(b), providing for involuntary dismissal. Where there was a failure to comply with orders relating to discovery and the filing of briefs, upon motion pursuant to Rule 37, F.R.C.P., the Court awarded costs "including attorneys fees," finding there was an inherent power to assess attorneys fees against a party who had litigated in bad faith. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). And in proceeding against an attorney under Rule 37, F.R.C.P., pertaining to discovery, *J.M. Cleminshaw Company v. City of Norwich,* 93 F.R.D. 338 (1981), the court, noting an era of rapidly expanding dockets and referring to a broad range of inherent powers available, imposed expenses and attorneys fees to the prevailing party and an additional sanction against the offending attorney, payable to the clerk of court from his personal funds. The court cited as authority *Roadway Express, Inc. v. Piper, supra,* wherein it is stated:

"If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes." 100 S.Ct. at 2464.

In *Itel Containers International Corporation v. Puerto Rico Marine Management, Inc.,* 108 F.R.D. 96 (1985), defendant, knowing the court was without jurisdiction, concealed that fact, deceptively answered interrogatories to continue the concealment and litigated the matter for an extended period of time before dismissal. The court, relying upon violations of Rules 7, 11, and 26(g), F.R.C.P. and 28 U.S.C. § 1927, imposed a sanction against defendant and his counsel jointly and severally by entry of a judgment for attorneys fees payable to the plaintiff in the amount of $41,150.50. Then, relying upon *Eash v. Riggins Trucking, Inc., supra,* 757 F.2d at 568, the court identified an inherent power to impose a monetary penalty upon an attorney for abusive litigation practices and imposed a sanction in the amount of $5,000 to be paid to the government.

*Eash v. Riggins Trucking, Inc., supra,* presents an enlightening and comprehensive discussion in both the majority and dissenting opinions of inherent power of courts to impose sanctions. In Eash, plaintiff's attorneys' repeated attempts to communicate with defendant's attorney concerning settlement during the week preceding trial were unsuccessful. On the date trial was to begin, the parties came to court, and defendant's counsel proposed a settlement figure which plaintiff accepted. The court believed defendant's counsel was scheduled for trial in state court and had settled to avoid a scheduling conflict. The court imposed a sanction of $390 on defendant's attorney which was the jury fee for 13 jurors who appeared and would have been selected for the case. Concerning the imposition of sanctions upon an attorney, it is stated:

"[C]ourts must be able to impose reasonable sanctions for conduct by lawyers that falls short of contempt. A court's inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it, provides authority to fashion tools that aid the court in getting on with the business of deciding cases." (Citations omitted.) 757 F.2d at 567.

Because the sanctioned attorney was not given notice and an opportunity to be heard, the cause was remanded for further proceedings consistent with the opinion. Four judges dissented from the majority opinion and would have held that the assessment against the attorney was not a recoverable cost, could not be imposed under any rule or congressional legislation then existing, but was purely and simply a fine levied against the attorney and as such could only be imposed pursuant to the contempt powers of the court. The dissent further would have held that the late settlement did not rise to the level of contempt and that courts should not be permitted to fine attorneys on an ad hoc basis without clear authority therefor, stating:

"Because there are few effective checks on the judiciary in our democratic form of government, we must be particularly sensitive to the need to check ourselves. There is no more difficult task before judges than to voluntarily decline to expand their own powers. It may appear that the fine imposed in this case, a mere $390, is too trifling to presage an arrogant usurpation by the judiciary of the powers of the other branches. But the principle that underlies the majority's affirmation of the district court's power has no ⸱built-in limitation. If a district court chooses to rule that attorneys who tried a lengthy libel or antitrust case before settling it could and should have reached a settlement before trial, the majority's holding could authorize that court to impose on the trial attorneys the heavy expenses of jurors fees and presumably their food and other expenses as well. * * * [W]e cannot be blind to the lesson of history that unchecked power may lead to abuse." 757 F.2d at 580 (Sloviter, J., dissenting.)

The majority and dissenting opinions in the Eash case clearly define the problem which confronts us. But we can distinguish the Eash case from the case at hand in that it

involved what the court viewed as specific misconduct of an attorney in settling the morning of trial because of a conflict with another setting in another court. The case before us involved no misconduct by the attorneys but was simply what the court viewed as a late settlement.

The cases discussed to this point deal with special facts and circumstances peculiar to the particular case involved. They generally involve abusive practices or bad faith actions by parties or attorneys in the case. An inherent power to impose the sanctions has been recognized because of the special circumstances, although support for those sanctions may not be found in particular rules and legislative enactments.

Usually litigation is subject to settlement in some manner. The imposition of a sanction for late settlement in this case involves no peculiar facts or circumstances, but is applicable to all cases pending before the court. Therefore, we are not concerned with bad faith or abusive activities of the kind described in the preceding cases.

Two cases focus most clearly upon the problem which confronts us. In *White v. Raymark Industries, Inc.*, 783 F.2d 1175 (4th Cir.1986), the district court assessed juror costs in the amount of $2,000 against Raymark Industries pursuant to Local Rule 20(C) for the Eastern District of Virginia. Local Rule 20(C) states:

"Whenever any civil action scheduled for jury trial is settled or otherwise disposed of in advance of the actual trial, then, except for good cause shown, juror costs, including Marshal's fees, mileage and per diem, shall be assessed equally against the parties and their counsel or otherwise assessed as directed by the Court, unless the Clerk's Office is notified at least one full business day prior to the day on which the action is scheduled for trial * * *." Id. at 1176.

In affirming the sanction imposed, it was held that the district court had power to promulgate Local Rule 20(C) emanating from congressional legislation and federal statutes, uniform federal rules, and the inherent power vested in federal courts to control their proceedings. The court fur-

ther found that Raymark's insurer had not demonstrated good cause and that there was no abuse of discretion in the entry of the district court's order assessing juror costs against Raymark.

In *Ruiz Ruiz v. Nazario*, 108 F.R.D. 399 (1985), juror costs were assessed to the Justice Department pursuant to Local Rule 323 which provides in part:

"Whenever any civil action scheduled for jury trial is settled or otherwise disposed of in advance of the actual trial, then, except for good cause shown, jury costs, including Marshal fees, mileage, and per diem, may be assessed * * * unless the Clerk is notified before twelve noon of the last business day preceding the time when the action is scheduled for trial * * *."

The court noted that the rule is not a disciplinary sanction, is imposed only upon last minute settlements when the parties cannot show good cause for failure to give prior notification or timely settle, and is imposed pursuant to the broad discretionary power of the district courts to interpret and apply their local rules to promote efficiency in the courts. The court then affirmed the order requiring the Justice Department to deposit with the court the sum of $1455.74, the total amount assessed for jury costs.

It is often said that a good settlement is better than a good lawsuit. To that we add, that a good settlement is better than a lengthy trial. Settlement of cases ought to be encouraged. Even a late settlement more often than not results in considerable judicial economy. It is suggested the courtroom will sit empty. That should not be so. But even if on occasion that does occur, we must recognize that here the jury panel did not appear for trial. Jury fees, costs and per diem, a lengthy trial, post-trial motions, hearings, orders, notice of appeal and appellate proceedings were all avoided with the consequent saving of judicial resources and time. We cannot help but wonder in this case what would have happened had the parties, knowing that a $5,000 sanction would be imposed for late settlement, called the judge and advised that they could settle the case except for

the $5,000 penalty. Would the court prefer sitting through a five-day trial with attendant costs? We also wonder whether the $1,000 per day ad hoc rule would apply to all cases—divorce, collections, contracts, parental rights, etc. Sometimes in divorce cases there is no money. Are parties without money exempt or do attorneys then pay?

The court in *Eash v. Riggins Trucking, Inc., supra,* 757 F.2d 557, after recognizing the authority of the court under its inherent powers to impose sanctions, stated:

"Certainly, however, the district court must exercise discretion and sound judgment in dealing with the myriad methods with which lawyers may abuse the judicial process. Nor is anything in this opinion meant to suggest that settlement on the eve of trial is in and of itself improper. Frequently a settlement may be in the best interest of not only clients and their attorneys, but of the judicial system and society as a whole." Id. at 568.

■ There is no statute or rule under which the district court could have imposed the $5,000 sanction assessed against the parties in this case. Settlement is something that is involved in every case and is so common that if a failure to settle is to be the subject of sanctions, that at least ought to be provided in some rule governing procedure and practice before the court. We hold, therefore, that the court does not have inherent power on an ad hoc basis to impose sanctions against parties or attorneys for something so common, usual and general as case settlement.

Here it seems that contrary to *Glatter v. American National Bank of Powell,* Wyo., 675 P.2d 642 (1984), the court, being "aggravated"—"not mad," may have acted upon impulse in imposing sanctions, for there is nothing in the record that supports a finding that the cost of an empty courtroom is $1,000 per day. For this reason alone, we could not approve the sanction imposed.

We do not by this opinion suggest or approve sanctions for late settlement of cases, but do recommend that, if imposed, they should be pursuant to some rule specifying reasons and circumstances allowing imposition and giving notice to all concerned. Before adoption of such rule, it would surely be advisable that there be considerable study and that the court have the benefit of input from all segments of the judicial system and the advice of the Rules Advisory Committee.

For the reasons stated, the order of the district court imposing sanctions is reversed.

BROWN, C.J., filed a specially concurring opinion.

BROWN, Chief Justice, specially concurring.

I generally agree with that said by the majority in its opinion and concur in the result. However, the opinion sets out basic rules regarding inherent powers of the court to impose sanctions, and then unnecessarily dilutes the application of those rules.

The majority quotes with approval *Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 567 (3rd Cir.1985), as follows:

" '[C]ourts must be able to impose reasonable sanctions for conduct by lawyers that falls short of contempt of court. * * * A court's inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it, provides authority to fashion tools that aid the court in getting on with the business of deciding cases. * * *' "

The majority in its opinion also says: "It is unquestioned that courts have inherent powers beyond those specified in rules and statutes that are absolutely necessary to the courts' ability to perform the functions for which they were created. * * *

* * * * * *

"An inherent power to impose the sanctions has been recognized because of the special circumstances, although support for those sanctions may not be found in particular rules and legislative enactments."

The majority, however, concludes its well-written opinion by saying:

" * * * We hold, therefore, that the court does not have inherent power on an ad hoc basis to impose sanctions against parties or attorneys for something so common, usual and general as case settlement.

\* \* \* \* \* \*

"We do not by this opinion suggest or approve sanctions for late settlement of cases, but do recommend that, if imposed, they should be pursuant to some rule specifying reasons and circumstances allowing imposition and giving notice to all concerned. * * *"

This later pronouncement by the majority seems to nullify or dilute what was said before in the opinion regarding inherent powers of the court.

I believe that the trial court does have inherent power or should have inherent power to impose sanctions in the proper case, not for late settlement but for playing fast and loose with the court. It seems that modest sanctions would be preferable to the trial judge stacking cases.

My experience suggests several situations that I believe would justify the imposition of sanctions. For example, the judge leaves Kemmerer at 6:00 a.m. for what he supposes to be a five day trial beginning at 10:00 a.m. in Jackson. At 9:30 a.m. he learns, for the first time, from a custodian in the Jackson courthouse that the lawyers settled the case four days earlier. I humbly submit that in the circumstances just described, modest sanctions against the lawyers might be in order—not for late settlement but for their inexcusable neglect to inform the judge.

Sometimes lawyers settle cases well in advance of the trial date, but do not tell the judge about the settlement, thus giving him an opportunity to adjust his docket.

I think that a judge must have the tool of sanctions to be imposed in the proper case.